CURTIS HINES *et al.*, Plaintiffs-Appellees, v. ROBERT TURLEY *et al.*, Defendants-Appellants.

Second District   Nos. 2—92—1194, 2—92—1195 cons.

Opinion filed June 28, 1993.

William Y. Franks, of Waukegan, Jed Stone, of Law Offices of Jed Stone, Ltd., of Chicago, and Law Offices of Josette Skelnik, of Elgin (Josette Skelnik, of counsel), for appellants.

John T. Jursich, of North Chicago, for appellees.

JUSTICE COLWELL delivered the opinion of the court:

Defendants, Robert Turley *et al.*, appeal the trial court's order finding that grounds existed to dissolve the Mount Sinai Institutional Baptist Church (Mount Sinai) and to appoint a liquidating receiver. This appeal is proper under both Supreme Court Rule 307(a)(2) (134 Ill. 2d R. 307(a)(2)), as an interlocutory appeal from an order appointing a receiver, and Supreme Court Rule 303(a) (134 Ill. 2d R. 303(a)), as a final order appointing a liquidating receiver for a corporation. Defendants allege on appeal that: (1) plaintiffs lacked standing to bring an action seeking dissolution of Mount Sinai; (2) the trial court's finding that Mount Sinai was unable to carry out its corporate purposes violated the first amendment's prohibition against civil courts' involvement in religious matters; and (3) the trial court's findings that grounds existed to dissolve Mount Sinai were against the weight of the evidence. We reverse.

Mount Sinai Institutional Baptist Church, Inc., is a not-for-profit religious corporation located in North Chicago, Illinois. It was incorporated in 1984 but has a church history going back to at least the 1960's. Soloman Smith has served as pastor at Mount Sinai since 1970. The stated purpose of the church is the advancement of the kingdom of God. Mount Sinai approved and adopted a constitution on June 7, 1989, whose bylaws are at issue in this case.

A schism formed at Mount Sinai sometime in 1989-90 between those members who supported Reverend Soloman Smith and those who opposed him. The problems worsened due to disagreements over Smith's plan to use church funds to build a school. Some members opposed placing a mortgage on the paid-off church building to raise construction funds. The Smith detractors soon made efforts to remove Smith as pastor, as well as remove several deacons and members of the trustee board who supported Smith. These actions initiated this court's involvement in the church's affairs. In Mount Sinai Institutional Baptist Church *et al.* v. Ruby Ware *et al.*, 90—CH—259, Judge Emilio Santi issued an order finding there were irregularities in these "ousters" of the Smith supporters. He declared these actions null and void, returned those ousted to office, and directed new elections to be had in conformance with the church bylaws. In so doing, Judge Santi considered evidence of church membership and approved a list which declared certain voters eligible at said election. The order also stated that the preliminary injunction entered on plaintiffs' previous complaint remained in full force and effect. Judge Santi later entered another order which declared the results of these elections, including the retention of Reverend Smith. All plaintiffs and defendants in the case at hand were elected to the Mount Sinai board of trustees in October 1990 and declared so in Judge Santi's order.

The Smith detractors expressed dissatisfaction with these results and declared the church bylaws to be violative of Baptist doctrine. These detractors also attempted to dismiss the church's attorney, John Jursich, because his action in filing the case in court was allegedly against Baptist doctrine.

A complaint for temporary restraining order, preliminary injunction and permanent injunction was filed on April 25, 1991, by Curtis Hines, Ereal Lewis, Ralph McLean, Dannie Williams, Michael Taylor, and Fred Turman against named defendants and Mount Sinai. The complaint alleged that defendants Robert Turley, Eddie Freeman, Al Atkins, James Robinson, and Johnnie Henderson were trustees of Mount Sinai and had misused church funds on

items not approved by the board of trustees and in violation of Illinois law and the bylaws and customs and usage of the church. Specifically, the complaint alleged that a check for $14,000 to Reverend Carsie Barnes and a check for $1,300 to Linda Platt had not been approved by a majority of the board of trustees. The complaint attached Judge Santi's order from October 1990 as an exhibit. The trial court entered an order restraining defendants from paying any of the church's money to Reverend Barnes, but in all other respects, plaintiffs' prayer for relief was denied. Plaintiffs filed an amended complaint for a temporary restraining order, preliminary injunction, and permanent injunction and for damages on May 29, 1991. Plaintiffs then filed a second amended complaint on July 10, 1991, which sought the entry of an order dissolving the church and appointing a liquidating receiver instead of injunctive relief. The trial court struck certain paragraphs of this complaint, and plaintiffs then filed a third amended complaint on August 13, 1991. The trial court entered an order striking certain paragraphs of the third amended complaint and ordered that Mount Sinai be dropped as plaintiff in the case. Attorney John Jursich thereafter withdrew as counsel for Mount Sinai but remained as counsel for plaintiffs.

Plaintiffs filed a fourth amended complaint on October 15, 1991. Mount Sinai was not named as a plaintiff, but the six previous individuals remained as party plaintiffs. The fourth amended complaint alleged that a major schism had developed in the church, with approximately one-half of the membership following the ministry of Pastor Soloman Smith and approximately one-half opposed to Smith. Plaintiffs further alleged that the defendants signed checks at the request of the members opposing Smith and without the approval of the board of trustees. Specifically, plaintiffs alleged that an unlawful meeting was held on March 8, 1991, at which payment of $14,000 to Carsie Barnes and $1,400 to Linda Platt was authorized. Plaintiffs alleged the issuance of these checks was fraudulent and that the corporate assets were being misapplied and wasted.

The complaint further alleged that the church was unable to carry out its purposes because the worship services were frequently disrupted by loud singing and yelling from the Smith detractors in the congregation. In addition, the dissidents reduced Smith's salary to $1 a week, required him to pay rent and utilities, and removed the pastor's sign from his parking space. In light of these actions, plaintiffs prayed that an order be entered dissolving Mount Sinai and appointing a liquidating receiver to collect assets of the church.

Plaintiffs asked that the assets of the church be distributed to other not-for-profit corporations after the payment of all bills.

Defendants filed a motion to dismiss or strike this complaint. Defendants also filed a motion for involuntary dismissal pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619), alleging that the plaintiffs were no longer members or trustees of the church and therefore had no standing. Defendants attached an affidavit from Anna Smith, the Mount Sinai secretary-clerk, who stated that an individual must be in good financial standing, making a monthly contribution of at least $15 a month, in order to be an active member of the church. Ms. Smith stated that the church records revealed that none of the plaintiffs were active members of the church after October 15, 1991.

With respect to defendants' motion to dismiss, the court entered an order on November 27, 1991, in which plaintiffs were given 14 days to add Mount Sinai as a party to the cause of action and to file a response to the defendants' motion. Attorney John Henderson entered his appearance on behalf of Mount Sinai as a party plaintiff on December 11, 1991. Mount Sinai was later allowed to adopt the plaintiffs' fourth amended complaint as its complaint.

At the January 14, 1992, hearing on defendants' motion for involuntary dismissal, the trial court found that plaintiffs Michael Taylor and Dannie Williams had abandoned their memberships at Mount Sinai and thus had no standing in this action. The trial court also struck paragraph 5(a)(vi) and all of paragraph 6 of the fourth amended complaint but found the remaining allegations stated a cause of action. Defendants filed an answer to the fourth amended complaint. Attorney William Franks entered his appearance for Mount Sinai as defendant and adopted this pleading. Defendants' answer alleged as affirmative defenses that: (1) none of the plaintiffs were members of the church in good standing, (2) that the church was able to carry out its purposes, (3) the plaintiffs' claim was nonjustifiable under the first amendment, and (4) Mount Sinai is a congregational church whose member body determined the issues of church policy and that the plaintiffs were dissident members who had lost control within the church.

At the June 1, 1992, hearing on the fourth amended complaint, Anna Smith, the church clerk, testified she had been a member of Mount Sinai for 12 years. She often would take the minutes of church meetings and testified she attended meetings where mem-

bers of the church voted 78 to 2 to pay Reverend Carsie Barnes approximately $14,000 and voted 87 to 2 to pay Linda Platt $1,400.

Plaintiff Ereal Lewis testified he had been a member of Mount Sinai since 1983 and had served on the board of trustees until August 26, 1991. Lewis said that starting in 1990 there were several disruptions during the services. Often people in the audience would erupt in loud singing at the moment when Reverend Smith would move to the pulpit to speak. Smith's voice could not be heard when these disruptions occurred. Lewis saw these disruptions occur six to eight times throughout the year.

Lewis stated he had not received notice nor attended any board of trustees meetings after a meeting he attended in August 1991. Lewis admitted he had not paid monthly dues to Mount Sinai since approximately August 1991 and had not attended the church services there. Lewis acknowledged that he and the five other plaintiffs had met specially to hire Henderson as the attorney for the church.

Reverend Soloman Smith testified that he had been the pastor at Mount Sinai since 1970. Smith said the church body approved a purchase of land on which Smith planned to build a school. However, he could not secure approval for the school from the church body. Soon after, disruptions began at Sunday services and other meetings. After a prayer meeting on March 28, 1990, several members rushed to the front of the church and then forced themselves into Smith's study, demanding to talk with him. On April 1, 1990, Smith rose to the pulpit to talk and was interrupted by about 15 people who burst out singing when singing was not scheduled. The singing continued for about 20 minutes, and Smith dismissed the service and called the police.

The singing occurred again the following week at worship services. After Smith dismissed the service, church members started shouting back and forth. On April 22, 1990, one member got up during services and made an announcement without approval from the pastor that the church was going to have a meeting to straighten out the church. On July 15, 1990, another church member told Smith there would be no prayer service as scheduled and asked Smith for the keys to Smith's office. The trouble resumed shortly after Judge Santi's October 1990 order and the church's subsequent vote to retain Smith.

Smith testified that at a quarterly business meeting on March 8, 1991, there was a motion to fire attorney Jursich and fire Turman as trustee and to vacate the entire deacon board. At a meeting on

March 15, 1991, the men voted out of office in the court-ordered October 1990 election were put back in office by some of the Smith detractors. Smith also received a letter from several members in March or April 1991 asking him to resign. In April 1991, several members took Smith's name off the church van and removed his sign from the pastoral parking space. In June, Smith's salary was reduced to $1 per week, and he was informed he would have to pay utilities if he wished to stay in the parsonage. In May 1991 when Smith approached the pulpit to speak, several people yelled that he was not the pastor. The microphones and lights were turned off, and a group of men gathered around him at the altar. Someone called the police and the service ended.

On July 7, 1991, a church member announced a call meeting to terminate Smith as the pastor. Smith did not attend this meeting but instead waited in the parking lot. A vote of 94 to 0 was taken in favor of removing Smith. Smith attempted to preach that following Sunday but was stopped by several deacons standing near the altar. On July 21 Smith was ordered not to go into the pulpit. When he approached the pulpit and sat down, the police were called and Smith was escorted out and taken to jail. Smith was charged with criminal trespass which was later dismissed.

Smith acknowledged that Baptist churches were organized on the principle that the body of the church governs and that the majority of members rule. He said that although the matters regarding the administration of the church were usually submitted to the body of the church for decisions, bills which came into Mount Sinai for payment were to be considered and voted on by the board of trustees. Smith testified that the attendance at Sunday services is less than it was in November 1989. Smith said he now has a fellowship at Mount Moriah Christian Center.

Plaintiff Fred Turman testified that he has been a member of Mount Sinai since 1971. He had served as a deacon and on the board of trustees. Turman affirmed that a special meeting notice was sent out for August 26, 1991, to be attended by all trustees at the home of one of the plaintiff trustees. Only the six plaintiffs here attended this meeting. The plaintiffs decided at that time to make the church a party to litigation as plaintiff and hire J. John Henderson as its attorney.

Turman said a motion was made and carried at a March 8, 1991, meeting to terminate him from the trustee board. However, Turman believed he was still currently a member of Mount Sinai. He could not recall attending services at Mount Sinai since June

1991 but believed his dues were paid through September or October 1991.

Defendant Albert Atkins testified he was a trustee and financial secretary at Mount Sinai. As such, he was authorized to sign checks for the corporation and had done so since 1986. Atkins stated that at the January 1991 trustees meeting, the trustees asked Reverend Smith to see if Reverend Carsie Barnes would accept a lower payment of $6,800. Smith never got back to the trustees, who proceeded to pay Barnes approximately $14,000. Atkins said the only bills the trustees generally presented to the congregation for approval were those which exceeded $1,000 and were not for ordinary expenses. Atkins said the bills paid in 1991 were not taken to the congregation for approval because Smith would not let them have a church meeting while the church was in litigation before Judge Santi.

Atkins said the congregation was angry about attorney Jursich's bill, which had exceeded $1,000 and had been paid without being submitted to the church for approval. Atkins said the Mount Sinai Church body hired Franks as its attorney at the quarterly meeting on June 7, 1991, by a vote of 54 to 0. Atkins believed none of the plaintiffs in this case was a trustee at that time. The parties then stipulated at trial that, at the June 7, 1991, meeting, a member named James Spriggs had motioned that all trustees engaged in taking the trustees to court without church approval (the plaintiffs here) be removed from office. The motion was carried by a vote of 84 to 34.

Atkins testified that he attended a call meeting on February 10, 1992. The subject of the meeting was the termination of Turman's, McLean's, Hines', and Lewis' memberships. There was no written notice of this meeting. Atkins said the March 8, 1991, meeting at which Turman was terminated as trustee was announced from the pulpit two weeks before the meeting.

Defendant Eddie Freeman stated he had been a member of Mount Sinai for about 15 years and a trustee for 7 years. He said the board of trustees regularly met from January to June 1991 although no notices were sent regarding these meetings. Judge Santi's approved voting list was never used at any meetings that Freeman attended. Freeman stated that he was on the finance committee and, to his knowledge, the trustees had never paid a bill which was unauthorized by the church body.

Defendant Robert Turley testified he has been a member of Mount Sinai for about 15 years and a trustee since 1986 or 1987.

He served as treasurer from 1988 to 1991. He agreed that at the board meeting on January 15, 1991, the board members recommended that Reverend Barnes be paid a total of $6,800 for his services.

James Spriggs testified he has been a member of Mount Sinai since 1960. He was present at the July 12, 1991, meeting where Smith was terminated as pastor. Spriggs admitted he was part of the group opposed to Smith and that he had made a motion at the June 7, 1991, quarterly meeting to reduce Smith's salary to $1 per week. Spriggs said his opposition to Smith was based on ecclesiastical principles, primarily, that Smith, contrary to Baptist doctrine, refused to bring issues of how the church was to be run to the members of the church body. Spriggs was also upset that Smith would speak in tongues for long periods of time without a translator so that the congregation could not follow what was going on.

Several additional witnesses testified as to the disturbances at the services caused by those opposed to Smith. Smith was recalled and testified that when the disturbances began in 1990, all of the activities at the church declined. Smith said only a few children remained in Sunday school at the time he left in July 1991. At the close of the plaintiffs' evidence, defendants moved for a directed verdict which was denied.

Defendants presented Bill Mayfield, who testified he is a member of Mount Sinai and serves on the bylaws committee. He stated that the church recently ratified a new set of bylaws and had conducted elections under the new laws.

Hazel Moore, a member of Mount Sinai, testified that a committee was formed in March 1992 to search for a pastor for the church. The decision on the new pastor was to be made by the church.

The trial court's August 31, 1992, order determined that plaintiffs' claim to membership in Mount Sinai was based on a strained application of the bylaws since plaintiffs admittedly had not worshipped or contributed to the church since around the time Smith left in July or August 1991. However, the court found this fact did not impair their standing since there was no competent authority at Mount Sinai to declare plaintiffs' membership ended.

The trial court noted that it knew of no other reported case which involved a church dispute requesting dissolution of the church and distribution of its assets. However, the court found this case falls within the category of cases pertaining to property rights between factions of a church and is similar to *Jones v. Wolf* (1979),

443 U.S. 595, 61 L. Ed. 2d 775, 99 S. Ct. 3020, where the Supreme Court approved the "neutral principles approach" in church disputes. The trial court found it need not decide whether the church's constitution and bylaws are compatible with Baptist doctrine because these organic instruments constitute the rules which the congregation chose to be bound by before the dispute arose. Since the court need not decide that issue, nor Smith's suitability as pastor, the court concluded there is no question of church doctrine preventing the exercise of jurisdiction over this church dispute and that this case may be decided by references to "neutral principles."

The trial court noted that section A-4 of the church bylaws provided that termination of the pastor's office "shall be voted on in a Regular Church Business Meeting. Notice of such meeting and its purpose having been read from the pulpit on two consecutive Sunday's [sic]." Under these provisions, the court found Smith's dismissal on July 12, 1991, violated the provisions in this section. The court also found the removal of the plaintiffs from their trustee positions on June 7, 1991, violated section D-1 of the church bylaws, which provided that "one-third of the Trustee Board shall be elected annually." The removal of Fred Turman and the deacon board on March 8, 1992, violated the bylaws which state the church has the power, for good and sufficient cause, to remove any officers, but such vacancies shall be filled only after public notice has been given. The trial court found defendants here were among the Smith detractors and engaged in some of these acts.

The court concluded that it must determine whether the purposes of this not-for-profit church corporation are frustrated such that it should be dissolved. The court noted that the church, purportedly represented on both sides of the case, also purported to be independent of the parties. The court distinguished three entities in this case: (1) the association of persons bound by their support for Smith (plaintiffs); (2) the association of persons bound together by their opposition to Smith (defendants); and (3) the incorporated institution of the church. The court concluded that the natural persons on both sides of the case failed and refused to operate this not-for-profit corporation according to its charter and bylaws and thus deprived it of any corporate effect. Since no lawfully empowered or willing persons were operating it according to its charter and bylaws, the court found the corporate structure of the church had been abandoned by its members and therefore its purposes were frustrated. The court also struck the appearances of both Henderson and Franks, who purported to represent the church as a

corporation. In doing so, the court aligned the corporation as a defendant.

At hearing on the status of attorney Franks' future participation in the case and for suggestions as to the appointment of a receiver, the trial court determined that defendants could appeal this order of August 21, 1992, under Supreme Court Rule 307(a) (134 Ill. 2d R. 307(a)) once the judge appointed a receiver. Nominations were taken and the trial court appointed a receiver. Both the individual defendants and Mount Sinai as defendant filed a notice of interlocutory appeal and the causes were consolidated for this appeal.

██ We initially address plaintiffs' motion accompanying this case which prays that this court strike section IV of defendants' reply brief. Plaintiffs contend that defendants erroneously based this argument on the Religious Corporation Act (Ill. Rev. Stat. 1991, ch. 32, par. 163m *et seq.*) since the Religious Corporation Act has never been an issue in this cause. Defendants object to plaintiffs' motion, stating that plaintiffs cited to section 108.35(c) of the General Not For Profit Corporation Act of 1986 (Ill. Rev. Stat. 1991, ch. 32, par. 108.35(c)), which relates to the removal of "directors" from a corporation. Defendants note that Mount Sinai has no directors. Defendants contend that, although incorporated under the General Not For Profit Corporation Act of 1986 (Ill. Rev. Stat. 1991, ch. 32, par. 101.01 *et seq.*), the church's form of government more closely follows that covered in the Religious Corporation Act, in which the role of "trustees" rather than "directors" is described and defined. Defendants state their argument is based in section IV and is a legitimate response to the claims raised by plaintiffs and is permissible under Supreme Court Rule 341(g) (134 Ill. 2d R. 341(g)).

First, it must be noted that plaintiffs' cite to "Ill. Rev. Stat. 1991, ch. 38, par. 108.35(c)" is a scrivener's error since chapter 38 contains, in part, the Illinois Code of Criminal Procedure. Assuming then, that plaintiffs intended to cite to "Ill. Rev. Stat. 1991, ch. 32, par. 108.35(c)," we deny plaintiffs' motion to strike since defendants' response was a permissible assertion in response to plaintiffs' argument that section 108.35(c) of the General Not For Profit Corporation Act is the appropriate provision in determining whether Mount Sinai was able to carry out its corporate purposes.

██ On the merits, defendants first argue the trial court erred in denying defendants' motion for involuntary dismissal of the plaintiffs' fourth amended complaint because the plaintiffs lacked standing to bring an action seeking dissolution of Mount Sinai. Here, the trial court acknowledged that the plaintiffs' claim to con-

tinued membership in Mount Sinai is based on a strained application of the bylaws and *ad hoc* procedures not authorized by the bylaws. Michael Taylor and Dannie Williams, in fact, were found to lack standing by a previous court order on January 14, 1992. However, the trial court concluded this does not impair the remaining plaintiffs' standing since no competent authority existed at Mount Sinai to declare their membership ended. The trial court based its decision on the fact that no one was currently operating the corporation according to its charter and bylaws, thus depriving its acts of any corporate effect. However, this finding is not dispositive of the standing issue, since plaintiffs' memberships at Mount Sinai could have lapsed without any authoritative action by defendants. Under the General Not For Profit Corporation Act, the following individuals may bring an action for involuntary judicial dissolution of a corporation in certain circumstances: (1) the Attorney General; (2) a member entitled to vote or a director if the corporation is unable to carry out its purposes; and (3) a creditor. (Ill. Rev. Stat. 1991, ch. 32, par. 112.50.) The Mount Sinai bylaws state in section 9 that the voting membership of the church "shall consist of all adults, *active and in good financial standing*; and of person [*sic*] eighteen (18) years of age." (Emphasis added.) The bylaws also provide in section 8 that "[e]ach adult member shall be financially responsible for not less than $15 donation per month toward the current expenses of the church."

In addition, the bylaws provide in section 4(b):

> "Members who have absented themselves from the activities of the church and who manifest no interest in the church for a period of ninety (90) days and of whom no satisfactory information can be gained may upon recommendation of the Pastor, Deacons, Deaconess, and Counselors be placed on an inactive list. Any person whose name appears upon the inactive list shall not be counted as a voting member."

The trial court found no evidence that these plaintiffs were ever placed on an inactive list and concluded they maintained standing to bring this suit. However, earlier in the discussion of its finding, the trial court noted that Turman, McLean, and Lewis had not abandoned their membership, but "[t]here is no evidence in the record to show that they are anything but at the least inactive members." The trial court found the evidence as to Hines was "equivocal" and therefore insufficient to establish a lack of standing.

■ A person seeking to invoke the jurisdiction of the court must have some real interest in the cause of action or a legal or

equitable right, title or interest in the subject matter of the controversy. (*Weihl v. Dixon* (1977), 56 Ill. App. 3d 251, 253.) The standing doctrine assures that issues are presented to a court only by parties who have a sufficient personal stake in the outcome of the controversy. (*Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 527.) We find that the manifest weight of the evidence adduced at trial indicated that plaintiffs were no longer "active" members of Mount Sinai in good financial standing. All four plaintiffs testified at the hearing on January 14, 1992, that they had not attended worship services or any other activities at Mount Sinai since July 1991. All four were now attending Mount Moriah Church. Although three of the plaintiffs had donated money to Mount Sinai in the first half of 1991, none were currently making their $15-a-month donations to the church as provided in the bylaws. Although plaintiffs all testified they had not resigned their positions as trustees, they had not attended trustee meetings at Mount Sinai since July 1991. We are aware of the hostile atmosphere which undoubtedly prevailed against these plaintiffs at Mount Sinai; however, this does not dissuade us from finding that plaintiffs here had effectively relinquished their memberships at Mount Sinai and were, at best, inactive or nonvoting members as of the filing of the fourth amended complaint on October 15, 1991. As such, plaintiffs could not bring an action for involuntary judicial dissolution under section 112.50 of the General Not For Profit Corporation Act. (Ill. Rev. Stat. 1991, ch. 32, par. 112.50.) We find the trial court erred in ruling that plaintiffs had standing and therefore reverse the trial court's decision in this case.

■ Even if we were to find that plaintiffs had standing, they would still not prevail since we find that the trial court lacked jurisdiction to rule on whether Mount Sinai could carry out its purposes since the court's decision on that issue violated the first amendment's prohibition against civil courts' involvement in religious matters. The court's authority to resolve disputes is narrowly circumscribed by the first amendment's guarantee that the right to the free exercise of religion will not be abridged. (U.S. Const., amend. I; *Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich* (1976), 426 U.S. 696, 710, 49 L. Ed. 2d 151, 163, 96 S. Ct. 2372, 2381.) With the exception of certain types of church property disputes, Illinois courts have generally refused to decide cases that require a judicial interpretation of religious doctrine or church law. As the Supreme Court stated: "[e]ven when rival church factions seek resolution of a church property dis-

pute in the civil courts there is substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs." (*Milivojevich*, 426 U.S. at 709, 49 L. Ed. 2d at 163, 96 S. Ct. at 2380.) However, where doctrinal controversy is not involved in a church dispute, mandatory deference to religious authority is not required by the first amendment, and the court may choose from a variety of approaches in resolving the dispute. *St. Mark Coptic Orthodox Church v. Tanios* (1991), 213 Ill. App. 3d 700, 713.

■ A court must play limited roles in adjudicating church property disputes and may decide such a case if it can do so using neutral legal principles. Under the "neutral principles of law" approach, the court objectively examines pertinent church characteristics, constitutions and bylaws, deeds, State statutes, and other evidence to resolve the matter the same as it would a secular dispute. (*Jones v. Wolf* (1979), 443 U.S. 595, 602, 61 L. Ed. 2d 775, 784, 99 S. Ct. 3020, 3025; *St. Mark Coptic Orthodox Church*, 213 Ill. App. 3d at 713.) This approach has been recognized and, where appropriate, applied in Illinois. See, *e.g., Aglikin v. Kovacheff* (1987), 163 Ill. App. 3d 426, 431; *Grace Evangelical Lutheran Church v. Lutheran Church—Missouri Synod* (1983), 118 Ill. App. 3d 151, 156.

In *Jones*, the Supreme Court held that "a State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute." (*Jones*, 443 U.S. at 604, 61 L. Ed. 2d at 785, 99 S. Ct. at 3026.) The Supreme Court additionally noted that neutral legal principles allow a church to "specify what is to happen to church property in the event of a particular contingency, or what religious body will determine the ownership in the event of a schism or doctrinal controversy." (*Jones*, 443 U.S. at 603, 61 L. Ed. 2d at 785, 99 S. Ct. 3025.) The *Jones* Court recognized, however, that application of neutral legal principles to a church property dispute could produce erroneous results. The Court noted that a trial court would need to examine documents such as a deed or corporate bylaws of a church and such documents could incorporate religious concepts in provisions concerning church property. Thus, the trial court must take special care to scrutinize the documents in purely secular terms, without relying on religious precepts. *Jones*, 443 U.S. at 604, 61 L. Ed. 2d at 785, 99 S. Ct. at 3026.

■ One advantage of the neutral principles approach is that it is flexible and may be applied to all forms of religious organization

and polities, which are specific forms of church government. (*St. Mark Coptic Orthodox Church*, 213 Ill. App. 3d at 714.) Mount Sinai's polity is congregational, defined by the Supreme Court as a congregation which is strictly independent of other ecclesiastical associations and, where church governance is concerned, owes no obligation to any higher authority. (*Watson v. Jones* (1872), 80 U.S. 679, 722, 20 L. Ed. 666, 674.) Thus, if the church is congregational, the court must defer to the decision of the local church governance.

Here, the trial court elected to apply the neutral principles approach, finding it need not decide whether the church's constitution and bylaws are compatible with Baptist doctrine or other ecclesiastical issues, since there were no questions of church doctrine preventing the exercise of jurisdiction over Mount Sinai's dispute. In disputes over church control where the congregation itself is divided into conflicting factions, it has been held that the courts may determine which faction controls the property, without infringement upon the first amendment. Courts achieve this result by principles of statutory and common law to determine who has legal control over any particular corporation or association. (*Aglikin*, 163 Ill. App. 3d at 432.) The case at bar is a control dispute, a controversy among the members of the church over the control of the church itself. However, the exact issue at trial, whether the trial court could properly find that Mount Sinai could not carry out its purposes and thus order its dissolution, has not been specifically addressed by Illinois courts.

■ Based upon our review of the record, we determine the trial court erred in applying the neutral principles approach to the case at bar. The evidence at trial indicated that the church bylaws were violated due to unapproved votes, meetings, and disturbances; however, these factors do not override the fact that the underlying dispute, *i.e.*, who will be the pastor at Mount Sinai, is an ecclesiastical matter which is not within this court's purview.

The issue of who is to be pastor of a church was addressed in *Simpson v. Wells Lamont Corp.* (5th Cir. 1974), 494 F.2d 490. In *Simpson*, a pastor and his wife sued their former Methodist church, alleging that his removal as pastor and his family's eviction from the church parsonage violated his Federal civil rights and the first, thirteenth, fourteenth, and fifteenth amendments to the United States Constitution. The district court granted summary judgment to defendants, finding they were merely instruments of the church-instituted eviction. (*Simpson*, 494 F.2d at 492-93.) The United States Court of Appeals for the Fifth Circuit stated that "a con-

gregation's determination as to who shall preach from the church pulpit is at the very heart of the free exercise of religion" and that Congress did not vest the courts with jurisdiction to settle purely ecclesiastical disputes. (*Simpson*, 494 F.2d at 492.) Similarly, we find in the case at hand that a decision to affirm dissolution of Mount Sinai would require precisely the kind of searching inquiry into religious matters which our courts are forbidden to undertake. A mere finding that the defendants and other dissidents at Mount Sinai violated the bylaws and customs of the church, without regard to the basis of the violations and the congregation's doctrinal positions, would not be sufficient to permit dissolution of the church.

This case is before the court essentially due to a dispute over who is to be pastor of Mount Sinai. Given the ecclesiastical nature of this dispute, the plaintiffs' claims would fail regardless of our finding that they did not possess standing to bring this suit.

For the foregoing reasons, we reverse the decision of the circuit court of Lake County.

Reversed.

UNVERZAGT and WOODWARD, JJ., concur.