ROOSEVELT MARSAW *et al.*, Plaintiffs-Appellees, v. MARCENIA J. RICHARDS *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—04—2902

Opinion filed September 22, 2006.—Rehearing denied December 1, 2006.

Law Office of Roman P. Storzer, of Washington, D.C. (Roman P. Storzer, of counsel), and Burch & Associates, of Chicago (Clarence L. Burch, of counsel), for appellants.

Sonnenschein Nath & Rosenthal, LLP, of Chicago (William T. Barker, Terrance A. Norton, and John R. Labbe, of counsel), for appellees.

JUSTICE GALLAGHER delivered the opinion of the court:
Reminiscent of the Israelites' flight from Egypt, this ongoing

dispute over the leadership and control of the Bethlehem Healing Temple Church, Inc., in Chicago has followed an arduous and contorted path. We previously remanded to the trial court for consideration of plaintiffs' complaint after concluding the issues raised did not involve an impermissible inquiry into religious doctrine. On remand, plaintiffs amended their complaint, and after a bench trial, the court ordered an election of new directors of the church, at which some of the plaintiffs were selected.

This case is now before this court for a third time. Defendants, who represent one faction of church members, again contend that the trial court violated the church's autonomy under the first amendment to the United States Constitution by determining the church's membership and by further intruding on matters of church governance. For the reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

Plaintiffs Roosevelt Marsaw, Chester Hudson, Clarence Brownlow, Loncie McCray, Eugene Price, George Gibson and Clord Jordan represent one faction of the congregation of the Bethlehem Healing Temple Church, located at 12 South Oakley in Chicago. Defendants Marcenia Richards, Lela Walker, Marie Oliver, Michael Morris and A.C. Richards, Jr., represent an opposing group of congregants. This dispute over the church's leadership arose after the August 2001 death of Bishop A.C. Richards (the father of defendants Marcenia and A.C. Richards, Jr.).[1] The Marsaw group accused Bishop Richards of misusing about $70,000 in church funds for personal expenses between 1999 and 2001.

The trial court granted defendants' motion to dismiss plaintiffs' complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)), stating that it could not interfere in a religious dispute. Plaintiffs appealed that ruling to this court. This court remanded the case to the trial court, holding that the trial court should make factual findings and that it could apply a "neutral principles" analysis to determine which group should control the church, without necessarily touching on religious considerations.

On remand, plaintiffs amended their complaint to include three counts. In count I, the Marsaw group alleged that Marsaw, Hudson, Brownlow, McCray and Price were the lawful directors of the church and sought a declaratory judgment stating, *inter alia*, that the Richards group lacked authority over church affairs and should account for

---

[1] For clearer indentification and ease of discussion, we occasionally refer to plaintiffs as "the Marsaw group" and to defendants as "the Richards group."

church property. The complaint alleged that Marsaw was the only surviving member of the church's original board of directors and that in 2003, he "filled the vacancies in the board by electing Hudson, Brownlow, McCray and Price as directors." Count II, which was pled in the alternative, sought an election of directors of the church, with the roster of eligible voters to include those "generally recognized as church members." Count III sought an order granting the Marsaw group possession of the church and access to church records and funds.

The court held a two-week bench trial at which the parties presented testimony about how pastors and members of the board of directors had been selected over the years. The church was incorporated in 1980 under the Illinois General Not for Profit Corporation Act (805 ILCS 105/101 *et seq.* (West 2002)). In 1984, the church members elected A.C. Richards as pastor to succeed the late Charles Poole, who had also been chosen in an election. The church members who voted in the 1984 election were those who made contributions, or tithes, to the church and who were "baptized in Jesus' name and filled with the Holy Ghost," in the words of numerous witnesses at trial.

In 2000, Richards' health began to decline. During the same period, the church building began to deteriorate. More than one witness for the Marsaw group testified that although members of the congregation contributed to the church's building fund, Richards told them no money was available to make repairs and that additional funds would have to be raised for that purpose. Richards began to lose the loyalty and support of the congregation. Richards appointed the defendants to the board of directors in July 2000.

In May 2001, a group of 212 church members voted 192 to 20 to remove Richards as pastor.[2] Before Richards died in August 2001, he appointed his daughter Marcenia to succeed him as pastor. After Richards' death, church members who were loyal to Richards continued to lead the services. Some of the plaintiffs and those in the Marsaw faction of the congregation intervened, and arguments and physical confrontations erupted which led to police being called to the church. The majority of the congregation, including plaintiffs, began to hold church services elsewhere.

Witnesses offered differing testimony as to how members of the church's board of directors were selected. A.C. Richards, Jr., testified that board members were chosen "by appointment, recommendation

---

[2]A.C. Richards, Jr., testified for the defense that those "loyal to Richards" were "not allowed to vote," including himself. However, Richards also stated that about half of those who cast votes were loyal to his father.

and experience." Marie Oliver testified that the elder Richards appointed her to the board in 2000. Oliver stated that although the articles of incorporation state that board members are to be elected by church members, that practice was not followed. Some church members testified that despite being active in the church, they did not know that the church's corporate structure called for the election of directors.

Regarding church membership, Marcenia Richards testified that was a "purely religious matter" to be determined by the pastor. However, when she was asked, somewhat hypothetically, how she would know if someone was a member of the church, she replied that she would have to review that person's church attendance and a record of his or her contributions.

In 2003, church members received notice of an election of a board of directors, which Marsaw oversaw and at which Marsaw, Hudson, Price, McCray and Brownlow were elected. (According to plaintiffs' brief, Marsaw appointed those individuals in February 2003 and called for a churchwide election in July 2003 at which those candidates were elected by the membership. The Marsaw group contends on appeal that despite the court-ordered election that immediately preceded this appeal, the 2003 board is the properly constituted board.) In 2004, another election was held in similar fashion at which the first four of those five were reelected, with James Ketchum chosen in place of Brownlow.

At the close of evidence, the Marsaw group argued that instead of creating a hierarchical structure for the church under the Religious Corporation Act (805 ILCS 110/0.01 *et seq.* (West 2002)), Poole had formed the church as a not-for-profit corporation. The Marsaw group asserted that the 1980 articles of incorporation governed and that under the "special provisions" to the articles, annual meetings were to be held on the second Tuesday of July "for the purpose of electing directors."

The Richards group countered that Marsaw had no authority to oversee the 2003 election of directors because he was merely a holdover member of the original board. The Richards group contended that despite the "special provisions," Marsaw and the other members never before raised the issue of the lack of an annual election of church directors, and the Richards group argued that the Marsaw group should not be allowed to raise that issue now when Poole and the elder Richards are no longer present to provide testimony. The Richards group argued that the articles of incorporation were effectively amended by nonuse. It further contended that the corporate structure was formed merely to hold the church's property and that the trial court should not vest decisionmaking power in the congregation.

## The Election and the Trial Court Judgment

At the court's request, plaintiffs and defendants submitted written memoranda proposing election procedures, and the court then set out written criteria for those who could vote in the election. After discussing the option of holding the election at or near the church, the trial court ordered the election take place during a four-hour period on September 21, 2004, in the Daley Center courtroom in which the trial had been held.[3]

Each side submitted a list of church members who should be allowed to vote, with defendants maintaining their challenge to the court's authority to decide church membership. As the trial court noted, "little overlap" occurred in the parties' respective membership lists. A third list was compiled of members of the congregation who were eligible to vote in the 1984 election of Richards as pastor to replace the outgoing Poole.

The court appointed an election administrator to oversee the election process and report the results. The administrator's report listed five categories of voters. Category A (which accounted for 53 of the 284 ballots cast) included the members of the church who had been eligible to vote in the 1984 election. Categories B (7 ballots) and C (189 ballots) included, respectively, those whose names were on the lists provided by plaintiffs and defendants before trial and who either did or did not present additional documentation to verify their membership in the church. Category D (21 ballots) included those on the plaintiffs' and defendants' lists who were between the ages of 12 and 17 years old. Category E (14 ballots) included those whose names were not included on any list of eligible voters or who did not have a valid photo identification. Together with his or her completed ballot, each voter submitted an affidavit indicating the applicability of one or more of the following criteria: (1) their baptism in the Bethlehem Healing Temple Church; (2) their regular contributions to the church; and/or (3) regular attendance of church services.

The ballot listed five members of the Richards group and five members of the Marsaw group. The Richards group and its supporters evidently boycotted the election, and no votes were tallied in favor of their candidates, according to the election administrator's four-page written report. In a seven-page written order entered on September 23, 2004, the trial court confirmed the election results and stated that

---

[3]At one point, in response to the size of the possible voter turnout, the trial court noted that the process may be too unwieldy and might compromise security at the Daley Center. The court gave the parties the option of conducting an unsupervised election at a time and place of their choosing.

the church's new board of directors consisted of Loncie McCray, Clarence Brownlow, Chester Hudson and Eugene Price (all of whom served on the board prior to trial) and also James Ketchum (replacing Marsaw).

In addition, the trial court held that the July 2000 appointment of directors by Richards was "null and void" and that the directors chosen in 2003 by Marsaw also were not properly selected. The court noted that pursuant to the 1980 articles of incorporation, directors were to be elected by members of the church. The court awarded the newly elected board "all of the powers entrusted to it" by the church's articles of incorporation.

## ANALYSIS

### I. "Law of the Case" Doctrine

On appeal, defendants first contend that the trial court could not carry out this court's instructions on remand without delving into issues of religious doctrine. Defendants argue that by following the directions of this court, the trial court impermissibly intruded into matters of church governance in two ways: by determining the church's membership and by imposing a member-elected form of government.

■ Plaintiffs respond that this court's prior ruling that the parties' dispute could be resolved without considering ecclesiastical issues represents the "law of the case." The "law of the case" doctrine provides that an issue of law that was decided on appeal is binding on the circuit court on remand and on the appellate court on subsequent appeal. *Lowe Excavating Co. v. International Union of Operating Engineers Local No. 150*, 358 Ill. App. 3d 1034, 1040, 832 N.E.2d 495, 501 (2005). When the appellate court "announces a particular view of the law governing the case and reverses and remands the case for further proceedings in accordance with the views announced, if the case is again brought before such court for review the former decision is binding on the court making it, and the questions decided and determined by it on the first appeal are not open for reconsideration on the second appeal." *Zerulla v. Supreme Lodge Order of Mutual Protection*, 223 Ill. 518, 520, 79 N.E. 160 (1906); see also *Lowe Excavating*, 358 Ill. App. 3d at 1040, 832 N.E.2d at 501.

This court previously considered the trial court's dismissal of the case at the pleadings stage. In *Brownlow v. Richards*, Nos. 1—01—3164, 1—02—1346 cons. (2002) (unpublished order under Supreme Court Rule 23), we considered the appeal from the trial court's grant of defendants' motion to dismiss the complaint. The basis of the trial court's ruling was that its resolution of the complaint would involve

an impermissible interference in religious affairs. This court remanded for the trial court to hear and consider evidence and "make findings of fact necessary to a neutral principles analysis." On remand, a different trial judge, based on the evidence presented, resolved the parties' dispute over church property and governance by considering the church's governing documents and ordering the election of a new board of directors.

■ We do not find the "law of the case" doctrine to bar our current consideration of the trial court's rulings because in the previous appeal of this case, we determined that the trial court needed to make factual findings. We now consider whether the trial court, upon remand, correctly applied the law to its own findings of fact. As plaintiffs state, this court's task at this stage is not to revisit whether the case should have been remanded to the trial court but to determine if the trial court properly executed the mandate it received. See *Petre v. Kucich*, 356 Ill. App. 3d 57, 63, 824 N.E.2d 1117, 1122-23 (2005).

## II. The Trial Court's Application of Neutral Principles of Law

Turning to the underlying issues raised by defendants on appeal, we consider whether the evidence at trial indicates that the court resolved the parties' dispute based on neutral principles or whether the court's rulings constituted an impermissible intrusion into religious matters.

Defendants renew their contention that the trial court's determination of which group could control the church involved an improper consideration of its religious doctrine. They contend that the trial court violated the first amendment protections of church autonomy in two ways: (1) by selecting the membership of the church and requiring an election; and (2) by replacing the church's leadership with the newly elected board and changing the church governance from a hierarchical model overseen by the pastor to a member-elected form of government embodied by a board of directors.

In this appeal, our standard of review differs from the standard under which we reviewed the trial court's dismissal of plaintiffs' complaint under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2002)). In the previous appeal, this court considered *de novo* whether the trial court lacked jurisdiction to address the substance of the complaint. See *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382, 808 N.E.2d 957, 962 (2004). Using that nondeferential standard, this court reversed the judgment of the trial court and ordered it to make factual findings, which the trial court has done and which form the basis of this appeal. The standard of review here is whether the trial court's ruling is contrary to the

manifest weight of the evidence. *City of Chicago v. Elevated Properties LLC*, 361 Ill. App. 3d 824, 832, 840 N.E.2d 677, 684 (2005).

As has been noted throughout the consideration of this dispute by the trial court and this court, the civil courts of a state have the general authority to resolve property disputes in a religious setting. *Jones v. Wolf*, 443 U.S. 595, 602, 61 L. Ed. 2d 775, 784, 99 S. Ct. 3020, 3025 (1979). Courts can consider such matters on a limited basis provided that the court's actions do not represent State interference with the free exercise of religion or include the resolution of a dispute on the basis of a party's religious doctrine or practice. U.S. Const., amend. I; *Jones*, 443 U.S. at 602, 61 L. Ed. 2d at 784, 99 S. Ct. at 3025. The United States Supreme Court stated in *Jones* that the courts of a particular state are not bound to follow a particular method of resolving these types of controversies, though noting that courts are required to avoid entering into a consideration of doctrinal matters, " 'whether the ritual and liturgy of worship or the tenets of faith.' " *Jones*, 443 U.S. at 602, 61 L. Ed. 2d at 784, 99 S. Ct. at 3025, quoting *Maryland & Virginia Churches v. Sharpsburg Church*, 396 U.S. 367, 368, 24 L. Ed. 2d 582, 584, 90 S. Ct. 499, 500 (1970) (Brennan, J., concurring, joined by Douglas and Marshall, JJ.).

■ Following the analysis used in *Jones*, Illinois courts have adopted the "neutral principles of law" approach, in which a court may examine church charters, constitutions and bylaws, deeds, state statutes and other evidence to resolve the matter in the same way as it would a secular, or nonreligious, dispute. *Apostolic New Life Church of Elgin v. Dominquez*, 292 Ill. App. 3d 879, 884, 686 N.E.2d 1187, 1191 (1997); *St. Mark Coptic Orthodox Church v. Tanios*, 213 Ill. App. 3d 700, 714, 572 N.E.2d 283, 291 (1991).

In *Aglikin v. Kovacheff*, 163 Ill. App. 3d 426, 432, 516 N.E.2d 704, 708 (1987), this court discussed the "neutral principles" analysis in greater detail:

"As a general rule, neutral principles may be applied to two types of church property disputes: ownership disputes and control disputes. In church ownership disputes, a court may decide whether property belongs to the local church or general church by reference to 'objective well-established concepts of trust and property law.' (*Jones v. Wolf* (1979), 443 U.S. 595, 603, 62 L. Ed. 2d 775, 785, 99 S. Ct. 3020, 3025). In control disputes, where the local congregation is itself divided into conflicting factions, the courts may determine which faction controls the property, without infringement upon first amendment rights, by consulting the 'well-established principles of statutory and common law traditionally applied to determine who has legal control over any particular

corporation or voluntary association and how freely or extensively that control can be exercised.' [Citations.]"

## A. *Church Membership*

■ Defendants further contend that a civil court cannot involve itself into the issue of membership in a religious organization. They argue that the trial court's decision regarding church membership necessarily involved inquiry into religious doctrine because the qualifications for membership are "purely religious."

Defendants argue that they submitted a list of members under protest, and they challenge the affidavits that each voter submitted attesting to his or her baptism, church contribution and/or attendance at church services. They assert that the affidavits represented a "rewriting" of the conditions of church membership because the court removed the religious component of membership.

Although defendants attempt to inject a religious standard on the requirements for membership, Marcenia Richards testified that to determine a person's church membership, she would review his or her church attendance and contributions. The record reflects that plaintiffs and defendants submitted to the trial court a list of members who should be allowed to vote in the election. Individuals were allowed to vote even if they did not provide additional documentation of their membership in the church. The election administrator's report indicates that every person who attempted to cast a ballot was allowed to do so.

Based on those facts, the trial court's actions did not represent a judicial inquiry into religious doctrine. The court also did not impose its own membership requirements.

## B. *Form of Church Governance*

Defendants also contend that the trial court impermissibly imposed a new form of governance on the church, favoring a "congregational" model in which a board of directors is elected by the church's membership to oversee the church's affairs, in contrast to the previous use of a "hierarchical" model under which the pastor appointed the directors.

■ This court has exercised jurisdiction to resolve disputes between competing factions of an organization in a religious setting. See *Ginossi v. Samatos*, 3 Ill. App. 2d 514, 525-26, 123 N.E.2d 104, 109 (1954). Here, the parties and the pertinent cases often refer to a church's polity, which is its internal structure or form of church government. *Kelley v. Riverside Boulevard Independent Church of God*, 44 Ill. App. 3d 673, 680, 358 N.E.2d 696, 701 (1976). This court discussed the difference between a hierarchical and a congregational form of church organization in *Aglikin*:

"When doctrinal or polity issues arise in the determination of a property dispute, the courts must defer to the resolution reached by the church's highest ecclesiastical authority. [Citation.] If the church is hierarchical, *i.e.*, the local church is a subordinate member of a general church organization, then a civil court's decision must defer to that of the general church. [Citation.] If the church is congregational, *i.e.*, the local church is strictly independent of other ecclesiastical organizations, the civil court should defer to the decision of the local congregational governance. [Citations.]" *Aglikin*, 163 Ill. App. 3d at 430-31, 516 N.E.2d at 707.

Defendants employ a different definition of "congregational" and "hierarchical" than those set out in *Aglikin*. Defendants describe a hierarchical system as that led by the pastor, and they assert that, here, the church's pastor "has asserted hierarchical control over all aspects of the religious institution," including the appointment of directors. They contend that the trial court replaced that hierarchical structure with a "congregational model," where the church's members elected a board of directors.

However, the United States Supreme Court has defined a "congregational" form of church government as one that is independent of other ecclesiastical associations. See *Hines v. Turley*, 246 Ill. App. 3d 405, 419, 615 N.E.2d 1251, 1260 (1993), citing *Watson v. Jones*, 80 U.S. 679, 20 L. Ed. 2d 666 (1872). If a church is congregational, the court must defer to the decision of the local church governance. *Aglikin*, 163 Ill. App. 3d at 430-31, 516 N.E.2d at 707; see also *Hines*, 246 Ill. App. 3d at 419, 615 N.E.2d at 1260.

The members of the Bethlehem Healing Temple Church organized a national group called the Living Witnesses of the Apostolic Faith (LWAF). However, the church's governing documents reflect a congregational organization rather than a hierarchical one. The trial court stated in its written order that "[t]he neutral evidence in this case does not indicate that the [church] is a hierarchy controlled by the leadership of the LWAF."[4] Moreover, the special provisions appended to the articles of incorporation state that church directors are elected by the members of the church to manage the church's business.

Defendants argue that the church has never practiced a member-elected form of government. Indeed, the trial testimony established that the procedures set out in the articles of incorporation and ac-

---

[4]We previously noted that the pastor of a church affiliated with the LWAF is appointed by the presiding bishop and not by members of the church. *Brownlow v. Richards*, 328 Ill. App. 3d 833, 835 n.2, 767 N.E.2d 482, 484 n.2 (2002).

430

companying special provisions were largely dormant and had been used inconsistently and intermittently. Witnesses who were active in the church, including McCray, Brownlow, Gibson and Marsaw, testified that they did not know the church was organized as a corporation and that directors were to be elected by church members. Both Poole and Richards appointed individuals to the board of directors at different points. However, the record also indicates that Richards was elected in 1984 by the church's members to replace Poole.

Defendants point to that testimony, among other facts, to state that the articles were modified or abandoned by nonuse. The facts of this case are similar to those in *First Church of Deliverance v. Holcomb*, 150 Ill. App. 3d 703, 502 N.E.2d 298 (1986). There, a dispute about the church's leadership arose at First Church of Deliverance, which was incorporated in 1977 as a not-for-profit corporation. *Holcomb*, 150 Ill. App. 3d at 705, 502 N.E.2d at 299. At a meeting attended by a large number of church members, several members "expressed various concerns about the church's finances," and a resolution was made and approved to replace the current board of directors with new directors. *Holcomb*, 150 Ill. App. 3d at 705, 502 N.E.2d at 299. The members of the new board sought a preliminary injunction against the previous directors seeking to prevent the displaced board from interfering with the operations of the church. *Holcomb*, 150 Ill. App. 3d at 705-06, 502 N.E.2d at 300.

Holding that the evidence supported the denial of the motion for a directed verdict in favor of the displaced board members, the trial court noted that the church's bylaws and election procedures had gone unused and that the church essentially had governed its meetings "by custom." *Holcomb*, 150 Ill. App. 3d at 709-10, 502 N.E.2d at 302. While noting the testimony that the church's members did not vote on church matters, the court held that "[t]he fact that no prior elections of board members had taken place did not preclude the congregation from removing directors who had acted to its detriment." *Holcomb*, 150 Ill. App. 3d at 710, 502 N.E.2d at 302.

■ Here, as in *Holcomb*, testimony was presented that the church's funds were being used improperly. The apparent dormancy of the articles and written procedures in the instant case does not negate their effectiveness. Moreover, the use of a "majority rule" system is supported by precedent in cases involving church governance of similarly organized congregations. *Dominquez*, 292 Ill. App. 3d at 888, 686 N.E.2d at 1194, citing *Jones*, 443 U.S. at 607, 61 L. Ed. 2d at 787, 99 S. Ct. at 3027; see also *Wright v. Smith*, 4 Ill. App. 2d 470, 475, 124 N.E.2d 363, 365 (1955). The trial court's rulings were not contrary to the manifest weight of the evidence.

### III. Defendant's Remaining Contentions

■ Defendants next assert that the trial court violated the Illinois Religious Freedom Restoration Act (775 ILCS 35/1 *et seq*. (West 2002)) (the Act), by taking control of the church away from Marcenia Richards and changing the church's form of governance. The Act provides that a government may not substantially burden a person's exercise of religion unless the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means" of doing so. 775 ILCS 35/15 (West 2002). Defendants attempt to apply this section of the Act to the trial court's ruling, arguing that the court restricted their exercise of religion.

While the parties' arguments on this point are not well developed due to plaintiffs' failure to respond to defendants' contentions on appeal as to this subject, the language of the Act does not support defendants' position. The Act states: "If a person's exercise of religion has been burdened in violation of this Act, that person may assert that violation as a claim or defense in a judicial proceeding and may obtain appropriate relief against a government." 775 ILCS 35/20 (West 2002).

Defendants contend that the trial court falls under the definition of "government" and that the court's order constitutes a governmental action that substantially burdened their ability to exercise their religion. Section 20 of the Religious Freedom Restoration Act allows a claim when a potential plaintiff's exercise of religion is impeded by a government action, and it states that claim or defense can be raised in a judicial proceeding. 775 ILCS 35/20 (West 2002). However, section 20 does not suggest that the result of a judicial proceeding can give rise to the claim itself. The cases that have been decided under the Act have involved government action in the form of zoning ordinances and tax exemptions, for example. See *Oak Grove Jubilee Center, Inc. v. City of Genoa*, 347 Ill. App. 3d 973, 808 N.E.2d 576 (2004); *Calvary Baptist Church of Tilton v. Department of Revenue*, 349 Ill. App. 3d 325, 812 N.E.2d 1 (2004); *County of Kankakee v. Anthony*, 304 Ill. App. 3d 1040, 710 N.E.2d 1242 (1999). The Act expressly authorizes a judicial proceeding to resolve a claim; it is thus difficult to perceive how such a judicial proceeding itself would violate the Act. Defendant's argument is illogical. The Act has never been applied to challenge a court's ruling, and we decline to extend its applicability to these facts.

■ Next, defendants renew their contention that plaintiffs' claims are barred by the doctrine of *laches*, arguing that plaintiffs did not raise the issue of the absence of elections for many years and now are benefitting from that silence. *Laches* is an equitable principle that bars relief to a party whose unreasonable delay in bringing an action

for relief prejudices the rights of the other party. *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1167, 835 N.E.2d 146, 159 (2005). As the party seeking to prove *laches*, defendants must show more than a mere passage of time; they must show an unreasonable delay in bringing the action that caused them material prejudice. See *Hayes*, 359 Ill. App. 3d at 1167, 835 N.E.2d at 159.

Defendants contend that for the last 20 years, the church was largely run by its pastor, despite the special provisions to the articles of incorporation, and that plaintiffs did not act to protect their rights during that time despite their actual knowledge of the documents. The testimony on this point was mixed, with some witnesses who were active in the church stating that they did not know that the church's directors were to be elected. As we have noted, the written provisions were used sporadically and inconsistently, apparently to the benefit of whichever group controlled the church at that time.

Defendants correctly point out that although the *laches* argument was raised to the trial court, the court made no explicit ruling on that point. However, whether *laches* applies depends on the unique facts and circumstances of a particular case. *Hayes*, 359 Ill. App. 3d at 1167, 835 N.E.2d at 159. The trial court's ruling that a new election of directors could be held effectively answers defendants' contentions that plaintiffs were not entitled to make use of the written provisions.

## IV. Plaintiffs' Cross-Appeal

In a cross-appeal, plaintiffs (the Marsaw group) contend that the elected board should not displace the board that was selected in 2003. The 2003 board included Hudson, Brownlow, McCray and Price, along with Marsaw, who was the only "holdover" member of the original board of directors. Plaintiffs argue that in the absence of a valid election of successor directors of the church, Marsaw continued to be the sole lawful director and maintained the power to appoint those directors in 2003.

Plaintiffs essentially ask this court to review the findings of fact and credibility determinations made by the trial court as to Marsaw and the 2003 board. We decline to disturb those rulings, which the court entered after hearing testimony at a two-week bench trial. See *City of Chicago v. Old Colony Partners, L.P.*, 364 Ill. App. 3d 806, 818, 847 N.E.2d 565, 575 (2006).

Lastly, in a request to cite supplemental authority, plaintiffs bring our attention to the recent decision of this court in *Muhammad v. Muhammad-Rahmah*, 363 Ill. App. 3d 407, 844 N.E.2d 49 (2006) (modified on denial of rehearing), which they argue is distinguishable from the instant case. Defendants did not respond to plaintiffs' argu-

ments regarding *Muhammad*; however, an extensive discussion of that case is not necessary, because we agree with plaintiffs that *Muhammad* is not analogous to the facts presented to the trial court here. The articles of incorporation of Bethlehem, the church in the instant case, specify that a director is to hold his or her office until a successor is elected. The church membership validly elected a new board of directors that did not include Marsaw, and, therefore, plaintiffs' claims that Marsaw continues as a holdover director are unavailing. We therefore deny the relief requested in plaintiffs' cross-appeal.

## CONCLUSION

For all of the reasons stated herein, we affirm the judgment of the trial court in resolving the parties' dispute through an election. We also reject plaintiffs' arguments on cross-appeal asking this court to replace the elected board with the 2003 board appointed by Marsaw.

Affirmed.

O'BRIEN, P.J., and TULLY, J., concur.