#25877-rev & rem-JKK

**2012 S.D. 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOHNNY WIPF, ALVIN HOFER,
JAKE HOFER, SR., JONATHAN
WALDNER, PAULY WALDNER,
JOHN P. WALDNER, HANS WALDNER
RONNIE WALDNER, JAKE HOFER, JR.,
MARVIN HOFER, DAVE HOFER, GLEN
WIPF and JOHNNY WIPF, JR., INDIVIDUALLY,
AS VOTING MEMBERS and AS DIRECTORS
and/or OFFICERS, OF HUTTERVILLE
HUTTERIAN BRETHREN, INC.,                    Plaintiffs and Appellees,


        v.


HUTTERVILLE HUTTERIAN BRETHREN,
INC., A SOUTH DAKOTA CORPORATION,             Defendant and Appellant,


        and


JOHN G. WALDNER, GEORGE WALDNER,
SR., TOM WALDNER and KENNETH
WALDNER, INDIVIDUALLY, AS
PURPORTED OFFICERS and/or
DIRECTORS and AS CURRENT and
FORMER VOTING MEMBERS OF
HUTTERVILLE HUTTERIAN BRETHREN, INC.,        Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE  FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JACK R. VON WALD
Judge
* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 14, 2011

OPINION FILED **01/25/12**

ROCHELLE R. SWEETMAN of
Murphy, Goldammer & Prendergast, LLP
Sioux Falls, South Dakota

Attorneys for plaintiffs
and appellees.


MATTHEW R. METZGAR of
Rhinehart Law, PC
Sioux City, Iowa

Attorneys for defendants
and appellants.

KONENKAMP, Justice

[¶1.]        This dispute is the latest in a continuing struggle between two factions in a Hutterite colony.  Mirroring the larger North American schism between Group 1 and Group 2 in the Schmiedeleut Hutterian Church, the factions here cannot agree on which Group to join.  One faction purported to excommunicate members of the other, and eventually the other faction sought court dissolution of the corporation.  Denying a motion to dismiss for lack of subject matter jurisdiction, the circuit court found one faction's conduct oppressive and concluded that the corporation was not functioning as a communal organization in accord with its articles and bylaws.  Thus the court ordered the appointment of a receiver to collect all the assets and divide the proceeds among the colony members.  But to decide which members were entitled to distributed assets, the court was obliged to determine which members were eligible.  On appeal, we conclude that to resolve competing claims over communal property requires an unconstitutional entanglement in a religious dispute on who are true church members and directors. We reverse and remand for entry of an order of dismissal.

### Background

[¶2.]        Hutterville Hutterian Brethren, Inc. (Hutterville) is a nonprofit religious corporation organized under South Dakota law.  It is one of fifty-four Schmiedeleut Hutterian colonies in South Dakota.  The Hutterite Church originally arose out of the Anabaptist reformed church movement following the Protestant Reformation.  "The distinguishing feature of Hutterites, among Anabaptists, was

their practice of sharing all earthly goods in common, called 'community of goods.'"[1]

Indeed, according to Hutterville's articles of incorporation, its purpose is to promote the Hutterian faith and church through communal living. Its bylaws identify corporate members as those at least eight-years-old who reside on the corporate property and are dependent upon the community fund. The bylaws also provide that members must live a communal life and follow the teachings and tenets of the Hutterian Church. Members have no individual property rights, and no member, officer, or director may receive compensation or corporate assets.

[¶3.]     After a 1992 schism in the North American Hutterian Church, many Schmiedeleut Hutterite colonies adopted a new constitution and affirmed their allegiance to a new Elder, since deceased. This branch is known as the Group 2 Hutterites or Committee Hutterites. The other colonies remained loyal to Elder Jacob Kleinsasser, forming the Hutterian Brethren, Group 1.[2] Each Group maintained that it was the "true Schmiedeleut."[3]

[¶4.]     Hutterville's members split on which Group to join. Some, forming the Wipf faction, wanted Hutterville to join Schmiedeleut Group 2. Others, forming the Waldner faction, headed by the colony minister, George Waldner, Sr., wanted to remain loyal to Elder Kleinsasser in Schmiedeleut Group 1. In 2008 and 2009, the

---

1.     Joanita Kant, Hutterites of South Dakota, The Schmiedeleut, 3 (Llumina Press 2006).

2.     *See generally* Alvin J. Esau, The Courts and the Colonies, The Litigation of Hutterite Church Disputes (UBC Press 2004) (recounting lawsuits primarily in Manitoba).

3.     *Id*. at 207.

Wipf faction attempted to replace Waldner and his followers as corporate leaders. To prevent this change in governance, the Waldner faction sought to remove a few of the Wipf faction members from officer and director positions. Eventually, however, after several meetings and elections, the Wipf faction obtained some control of Hutterville. Even so, the Waldner faction refused to recognize the new leaders or surrender control of the corporation. George Waldner, Sr. remained the colony minister and sought to excommunicate some of the Wipf faction members and disenroll them as members of Hutterville. These ongoing disputes over corporate governance and leadership sparked two lawsuits.

[¶5.] In the first action, Johnny Wipf, Alvin Hofer, and Jake Hofer, Sr. (some of the Wipf faction members) brought suit against John G. Waldner, George Waldner, Sr., Tom Waldner, and Kenneth Waldner (some of the Waldner faction members) seeking a declaration that Wipf and the Hofers were the directors of Hutterville. Each faction applied for a temporary restraining order against the other. The circuit court initially granted the Wipf-Hofer application and denied the Waldners' counter motion. The court examined Hutterville's articles of incorporation and bylaws and determined the identity of Hutterville's officers and directors. After the trial court's decision, however, the Waldners moved to dismiss the case for lack of subject matter jurisdiction. The Waldners argued that the circuit court was unconstitutionally entangled in a religious controversy. After a hearing, the court granted the Waldners' motion and dismissed the case in its entirety.

[¶6.] Wipf and the Hofers appealed, arguing that the case presented only secular issues of corporate governance. In a unanimous decision, we affirmed the dismissal. *Hutterville Hutterian Brethren, Inc. et al. v. Waldner et al.,* 2010 S.D. 86, 791 N.W.2d 169. We concluded that religious disputes over church leadership and membership so pervaded the corporate governance issue that it placed the cause of action outside a secular court's subject matter jurisdiction.

[¶7.] In the second suit, commenced while the first appeal was pending, the Wipf faction alleged that members of Hutterville were deadlocked over the management and control of corporate affairs. And the deadlock was preventing the members of Hutterville from carrying out the corporate purpose and causing irreparable injury to the corporation's financial status. The Waldner faction was accused of misapplying corporate assets and threatening the health and safety of Hutterville's members. The complaint requested the dissolution of Hutterville and the appointment of a receiver to carry out the business of the corporation while it wound up its business.

[¶8.] Waldner faction members moved to dismiss for lack of subject matter jurisdiction. They argued that the United States Constitution and the South Dakota Constitution precluded the court from dissolving Hutterville and appointing a receiver because the proceeding would require the court to identify genuine church members of Hutterville for purposes of standing under the dissolution statute and for purposes of asset distribution following liquidation. They believed the court's task of effectively certifying genuine membership would have required

ascertaining the true identity of the local church, violating the constitutional protections against government entanglement with religion.

[¶9.] In denying the Waldner faction's motion to dismiss, the circuit court concluded that Hutterville's "directors" were deadlocked. The court also found that much of the Waldner faction's conduct was oppressive, including locking up fuel and fire equipment and refusing to pay medical bills or to provide clothing and material for clothing. In addition, the court found that Hutterville was not functioning as a communal corporation and was therefore unable to carry out its corporate purposes. Finally, the court ruled that "[a]ll persons of the age of 8 and older who resided upon the real property of [Hutterville] on November 17, 2010 are members of [Hutterville] for purposes of dividing the proceeds from the sale of assets. This avoids any impermeable [sic] entanglement in religious issues." The court ordered Hutterville dissolved and appointed a receiver to divide the corporate property among all "members" as determined by the court's finding.

[¶10.] On appeal, the Waldner faction argues that the court erred in denying its motion to dismiss for lack of subject matter jurisdiction. It also contends that the court erred in dissolving Hutterville under SDCL 47-26-22 and challenges the court's ruling on corporate membership.[4]

---

4. Standards of review: "We review jurisdictional issues *de novo.*" *Hutterville Hutterian Brethren, Inc. et al. v. Waldner et al.*, 2010 S.D. 86, ¶ 18, 791 N.W.2d 169, 174. A trial court's findings of fact are examined under the clearly erroneous standard. SDCL 15-6-52(a); *Lien v. Lien*, 2004 S.D. 8, ¶ 14, 674 N.W.2d 816, 822. And conclusions of law are reviewed *de novo. Lien*, 2004 S.D. 8, ¶ 14, 674 N.W.2d at 822.

**Analysis and Decision**

[¶11.] "The First Amendment to the United States Constitution and Article 6, Section 3 of the South Dakota Constitution preclude civil courts from entertaining religious disputes over doctrine, leaving adjudication of those issues to ecclesiastical tribunals of the appropriate church." *Hutterville*, 2010 S.D. 86, ¶ 22, 791 N.W.2d at 175 (quoting *Decker ex rel. Decker v. Tschetter Hutterian Brethren, Inc.*, 1999 S.D. 62, ¶ 16, 594 N.W.2d 357, 362). "The fact that a portion of the dispute involves secular claims does not override this constitutional protection." *Id.* "[A] civil court may only adjudicate a church controversy if it can do so without resolving underlying controversies over religious doctrine." *Id.* Secular courts lack subject matter jurisdiction over lawsuits involving "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Id.* ¶ 31 (quoting *Serbian E. Orthodox Diocese for the U.S. and Can. V. Milivojevich*, 426 U.S. 696, 714, 96 S. Ct. 2372, 2382, 49 L. Ed. 2d 151 (1976)). In a prior proceeding involving these parties, we held that "[v]oting memberships, directorships[,] and officerships of Hutterville are inseparable from religious principles and contemplate local Church membership." *Id.* ¶ 34.

[¶12.] Constitutional limitations on civil court jurisdiction over disputes involving religious doctrine will not necessarily bar all claims touching on religious controversies. Under the "neutral principles of law" doctrine, civil courts may perform a "completely secular examination into church documents, state statutes[,] and other relevant evidence to determine the dispute." *Id.* ¶ 23. "The key to the

neutral principles of law approach is that such determination is to be made exclusively on objective, well-established concepts of law familiar to lawyers and judges." *Id.* But the "neutral principles of law" doctrine violates the First Amendment "when church doctrine and policy pervade the documents governing the church." *Decker*, 1999 S.D. 62, ¶ 18, 594 N.W.2d at 364. Furthermore, the neutral principles of law doctrine "has never been extended to religious controversies in the areas of church government, order[,] and discipline, nor should it be." *Hutterville*, 2010 S.D. 86, ¶ 26, 791 N.W.2d at 177 (quoting *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986)).[5]

[¶13.]     "Courts of equity shall have full power to liquidate the assets and affairs of a [nonprofit] corporation in an action by a *member or director*[.]" SDCL 47-26-22 (emphasis added). A court may dissolve a corporation when the plaintiff establishes one or more of the following circumstances:

> (1) [t]hat the *directors* are deadlocked in the management of the corporate affairs and that irreparable injury to the corporation is being suffered or is threatened by reason thereof, and either that the *members* are unable to break the deadlock or there are no members having voting rights; or
>
> (2) [t]hat the acts of the *directors or those in control of the corporation* are illegal, oppressive, or fraudulent; or
>
> (3) [t]hat the members entitled to vote in the election of directors are deadlocked in voting power and have failed for at least two

---

5. A few courts have directly addressed the involuntary dissolution of a nonprofit religious corporation, and these courts are split on whether neutral principles of law apply to the dissolution of such a corporation. *See Hines v. Turley*, 615 N.E.2d 1251 (Ill. App. Ct. 1993) (finding secular court lacked jurisdiction over dissolution of religious corporation). *But see Crocker v. Stevens*, 435 S.E.2d 690 (Ga. Ct. App. 1993) (upholding trial court's use of neutral principles of corporate law to dissolve religious nonprofit corporation).

years to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or

(4) [t]hat the corporate assets are being misapplied or wasted; or

(5) [t]hat the corporation is unable to carry out its purposes.

*Id.* (emphasis added). The court may appoint a receiver to preserve corporate assets during liquidation proceedings. SDCL 47-26-28 and -29.

[¶14.]        Corporate assets or proceeds from the sale or disposition of the assets must be distributed in a particular manner. *See* SDCL 47-26-30. First, all court costs and expenses and all corporate obligations must be satisfied. SDCL 47-26-30(1). Next, "[a]ssets held by the corporation upon condition requiring return, transfer, or conveyance, which condition occurs by reason of the dissolution or liquidation, shall be returned, transferred, or conveyed in accordance with such requirements[.]" SDCL 47-26-30(2). Then, corporate assets "subject to limitations permitting their use only for charitable, religious, eleemosynary, benevolent, educational, or similar purposes . . . shall be transferred or conveyed to one or more domestic or foreign corporations, societies, or organizations engaged in activities substantially similar to those of the dissolving or liquidating corporation . . . ." SDCL 47-26-30(3). "Other assets, if any, shall be distributed *in accordance with the provisions of the articles of incorporation or the bylaws to the extent that the articles of incorporation or bylaws determine the distributive rights of members,* or any class or classes of members, or provide for distribution to others[.]" SDCL 47-26-30(4) (emphasis added). Finally, "[a]ny remaining assets may be distributed to such persons, societies, organizations, or domestic or foreign corporations, whether for profit or not for profit, specified in the plan of distribution adopted as provided in

this chapter, or where no plan of distribution has been adopted, as the court may direct." SDCL 47-26-30(5).

[¶15.] Here, the circuit court dissolved the corporation under SDCL 47-26-22. The court concluded as a matter of law that the "directors" of Hutterville were deadlocked in the management of corporate affairs, that the Waldner faction's conduct was oppressive, and that Hutterville was unable to carry out its corporate purposes. The court also concluded as a matter of law that "[a]ll persons of the age of 8 and older who resided upon the real property of [Hutterville] on November 17, 2010 are members of [Hutterville] for purposes of dividing the proceeds from the sale of assets."

[¶16.] On the surface, the circuit court's ruling seems a welcome resolution to this ongoing dispute. Yet an examination of the statutory language and the corporate documents demonstrate that the dissolution of Hutterville cannot be separated from church membership, corporate leadership, and the underlying religious controversies. Under SDCL 47-26-22, only a member or director of a corporation may request the dissolution of the corporation. The Wipf faction comprises thirteen individuals who claim to be members and directors or officers of the corporation. But the court did not determine specifically whether the Wipf faction's participants were directors or members of the corporation.

[¶17.] In addition, the court's findings and conclusions on corporate membership are conflicting. Relying on Hutterville's articles of incorporation, the court made a factual finding that Hutterville's members are "all persons 8 and older who reside upon [Hutterville] property . . . and who are dependent upon the

community fund." On the other hand, the court also found that "[t]here remains a dispute as to who the members [of Hutterville] are[.]" Then, the court concluded as a matter of law that "all persons 8 and older who reside upon [Hutterville] property . . . and who are dependent upon the community fund" are members of Hutterville "*for purposes of dividing the proceeds from the sale of assets*." (Emphasis added.) But the court made no ruling on the additional requirement in the bylaws that all members of the corporation must follow the tenets of the local church and Hutterian faith. Thus, the identity of Hutterville's members is unclear.

[¶18.] Furthermore, although only one of the five subsections of SDCL 47-26-22 must be satisfied to permit involuntary dissolution, the court relied on subsections (1), (2), and (5) in dissolving Hutterville. Subsection (1) requires proof that the "directors" of Hutterville are deadlocked and subsection (2) requires proof that the "directors or those in control of the corporation" are committing illegal, oppressive, or fraudulent acts. Therefore, in order to dissolve Hutterville under SDCL 47-26-22, the court was required to determine the identity of Hutterville's directors. The Wipf faction contends that they did not ask the court to identify Hutterville's directors, and indeed, the court did not specifically name the directors. Nevertheless, the court concluded as a matter of law that Hutterville's "directors" were deadlocked. We have previously held that secular courts do not have the jurisdiction to determine the identity of Hutterville's directors. *Hutterville*, 2010 S.D. 86, ¶ 34, 791 N.W.2d at 179. Therefore, in dissolving Hutterville, the court either unconstitutionally decided who Hutterville's directors were or decided that Hutterville's directors were deadlocked without knowing who they were.

[¶19.] The circuit court also relied on subsection (5) in dissolving Hutterville. Subsection (5) requires proof that the corporation is unable to carry out its purposes. In this regard, the court concluded as a matter of law that "[Hutterville] is not functioning as a communal corporation, and is therefore unable to carry out its purposes." But Hutterville's articles of incorporation provide that "[t]he purpose of [Hutterville] is to *promote the Hutterian religious faith and church*." (Emphasis added.) The articles also provide that communal living is a "central part of the beliefs of the Hutterian Church[.]" Hutterville's operation as a communal corporation is relevant, therefore, but so is its corporate purpose of promoting the Hutterian religious faith and church. Thus, to find that Hutterville was unable to carry out its corporate purpose, the court had to determine that Hutterville was not promoting the Hutterian religious faith and church.

[¶20.] Finally, SDCL 47-26-30(4) provides that assets be distributed according to a corporation's articles of incorporation or bylaws. Hutterville's articles provide that "[i]n the event of termination, dissolution, or winding up of [Hutterville] in any manner or for whatever reasons, its remaining assets, if any, shall be distributed to one or more of the colonies of the Hutterian Church[.]" Hutterville's bylaws provide that upon either voluntary or involuntary dissolution, "the Board of Directors shall first attempt to negotiate a merger with another Hutterite colony[.]" The bylaws also provide that if the Board is unable to negotiate a merger, the Board must initiate liquidation proceedings and distribute corporate assets "equally to the then existing members of [Hutterville] *in good standing*[.]" (Emphasis added.) The court did not order that Hutterville's assets be distributed

to members in good standing, but this requirement is relevant to the dissolution of a nonprofit corporation under SDCL 47-26-30(4). Determining whether Hutterville members were in good standing requires an investigation into religious eligibility.

[¶21.] The Wipf faction correctly notes that the complaint did not expressly request that the circuit court identify Hutterville's members, directors, or officers or determine the true identity of the local church. Nonetheless, when "presented with a factual Rule 12(b)(1) subject matter jurisdiction question[,]" we "consider matters outside the pleadings." *Hutterville*, 2010 S.D. 86, ¶ 20, 791 N.W.2d at 174-75. Both the statutory language and Hutterville's corporate documents make membership and local leadership relevant to the involuntary dissolution of the corporation. Although the circuit court tried to avoid the religious controversy and dissolve the corporation, the Waldner-Wipf religious conflict pervades the dissolution of Hutterville.

[¶22.] The facts here are analogous to those in *Hines v. Turley*, 615 N.E.2d 1251 (Ill. App. Ct. 1993). In *Hines*, a schism divided members of a nonprofit religious corporation. *Id.* at 1252. Among other things, the two factions disagreed over who should be the pastor. *Id.* Members of each faction attempted to obtain corporate control and purported to hold official meetings and elections. *See id.* at 1254-56. The disagreements over corporate leadership and governance led to civil litigation. *Id.* at 1252-53. One faction requested dissolution of the corporation and appointment of a receiver. *Id.* at 1253. The members seeking dissolution alleged that corporate assets were being misapplied and wasted and that the corporation

was no longer able to carry out its purposes. *Id.* at 1253-54. In response, the opposing faction moved to dismiss the case. *Id.*

[¶23.] The lower court applied the neutral principles of law doctrine and found grounds to dissolve the corporation. *Id.* at 1257-58. Reversing, the appellate court held that the trial court "lacked jurisdiction to rule on whether [the religious corporation] could carry out its purposes since the court's decision on that issue violated the [F]irst [A]mendment's prohibition against civil courts' involvement in religious matters." *Id.* at 1259. The appellate court noted that "[t]he evidence at trial indicated that the church bylaws were violated due to unapproved votes, meetings, and disturbances; however, these factors do not override the fact that the underlying dispute, i.e., who will be the pastor at [the church], is an ecclesiastical matter which is not within this court's purview." *Id.* at 1260. Furthermore, the Court determined that "[a] mere finding that the defendants and other dissidents at [the church] violated the bylaws and customs of the church, without regard to the basis of the violations and the congregation's doctrinal positions, would not be sufficient to permit dissolution of the church." *Id.* at 1261.

[¶24.] Like the parties in *Hines*, the Waldner and Wipf factions cannot resolve an ongoing dispute on corporate membership and leadership. Also like the parties in *Hines*, the factions here failed to agree to dissolve the corporation. Both the lower court in *Hines* and the circuit court here attempted to apply neutral principles of law to dissolve a religious corporation. But as the *Hines* court stated, the underlying disputes implicate religious doctrine and controversies. Furthermore, as in *Hines*, the circuit court's finding that members violated

corporate rules, without more, will not support involuntary dissolution. We cannot simply overlook the religious undertones here.

[¶25.] The Wipf faction relies upon *Heitkamp v. Family Life Services*, 2000 N.D. 166, 616 N.W.2d 826 to support its argument that a civil court may dissolve a nonprofit religious corporation. In *Heitkamp*, the Attorney General of North Dakota sought the dissolution of a nonprofit religious corporation because of violations of state law by the corporation and its directors. *Heitkamp*, 2000 N.D. 166, ¶ 3, 616 N.W.2d 826, 830. As a remedy, the trial court reconstituted the board of directors. *Id.* On appeal, the Supreme Court of North Dakota held that the trial court's reconstitution of the board of directors violated the First Amendment. *Id.* ¶ 43. The *Heitkamp* court also found that involuntary dissolution of the religious corporation would be an appropriate remedy and would not violate the First Amendment. *See id.* ¶ 45.

[¶26.] *Heitkamp* does not directly resolve the jurisdictional issue here. The Wipf faction sought dissolution of Hutterville under a state statute allowing members or directors of a corporation to seek involuntary dissolution. By contrast, in *Heitkamp*, the attorney general brought suit under a state statute to dissolve a religious corporation for violations of state law. In addition, the identity of corporate members or directors was not at issue in *Heitkamp*, as it is here. While the Supreme Court of North Dakota held that involuntary dissolution of a religious corporation would not violate the First Amendment, it did so with different facts before it.

[¶27.]     When Hutterville made following the Hutterian religion a condition of corporate membership and weaved religious doctrine throughout its corporate documents, it limited a secular court's ability to adjudicate any corporate disputes. We cannot uphold the circuit court's order, findings, and conclusions without also endorsing its decision on the identity of corporate leaders and members. "Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs." *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC et al.*, ___ U.S. ___, ___, ___ S. Ct. ___, ___, ___ L. Ed. 2d ___ (2012). We conclude that the underlying religious controversies over church leadership so pervade the dissolution of the religious corporation that the dissolution is beyond a secular court's jurisdiction. Because we reverse on jurisdictional grounds, we need not address the remaining issues.

[¶28.]     Reversed and remanded, with instructions to dismiss the case for lack of subject matter jurisdiction.

[¶29.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.