#26554, #26566-a-JKK

**2013 S.D. 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOHNNY WIPF, ALVIN HOFER,
JAKE HOFER, SR., JONATHAN
WALDNER, PAULY WALDNER,
JOHN P. WALDNER, HANS WALDNER
RONNIE WALDNER, JAKE HOFER, JR.,
MARVIN HOFER, DAVE HOFER, GLEN
WIPF and JOHNNY WIPF, JR., INDIVIDUALLY,
AS VOTING MEMBERS and AS DIRECTORS
and/or OFFICERS, OF HUTTERVILLE
HUTTERIAN BRETHREN, INC.,                    Plaintiffs and Appellees,


        v.


HUTTERVILLE HUTTERIAN BRETHREN,
INC., A SOUTH DAKOTA CORPORATION,
JOHN G. WALDNER, GEORGE WALDNER,
SR., TOM WALDNER and KENNETH
WALDNER, INDIVIDUALLY, AS
PURPORTED OFFICERS and/or
DIRECTORS and AS CURRENT and
FORMER VOTING MEMBERS OF
HUTTERVILLE HUTTERIAN
BRETHREN, INC.,                              Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JACK R. VON WALD
Judge

* * * *

CONSIDERED ON BRIEFS
ON MAY 20, 2013

OPINION FILED **07/03/13**

EDWIN E. EVANS
SHANE E. EDEN of
Davenport, Evans, Hurwitz
  & Smith, LLP
Sioux Falls, South Dakota

        and

WILLIAM D. GERDES
Aberdeen, South Dakota

STEVEN D. SANDVEN
Sioux Falls, South Dakota

Attorneys for plaintiffs
and appellees.

Attorney for defendants
and appellants.

#26554, #26566

KONENKAMP, Justice

[¶1.]     This is the third appeal from the embattled factions at Hutterville Colony.  Both sides challenge the circuit court's actions following our last decision ordering dismissal of the suit for corporate dissolution.

## I.

[¶2.]     Hutterville Colony is owned by Hutterian Brethren, Inc. (Hutterville). It is a registered nonprofit religious corporation and one of South Dakota's several Schmiedeleut Hutterian colonies.  Hutterville's bylaws state its purpose as promoting the Hutterian faith through communal living.  Members include persons at least eight years old who reside on the corporate property and are dependent upon the community fund.  Living a communal life, members have no individual property rights.  Corporate officers and directors receive no compensation and hold no corporate assets, but they control the community fund and all corporate businesses.

[¶3.]     Hutterville has two opposing factions, paralleling the broader schism among Schmiedeleut Hutterians.  While leaders on each side — the Wipf faction and the Waldner faction — have proclaimed themselves members of the "true Schmiedeleut," they lived in peace until a few years ago, when both factions sought exclusive power over Hutterville.  Wipf faction members tried to take control through corporate meetings and elections; Waldner faction members maintained control by refusing to recognize the new leaders.  Both factions sought temporary restraining orders against the other.  Their schism spawned two lawsuits:

*Hutterville Hutterian Brethren, Inc. v. Waldner*, 2010 S.D. 86, 791 N.W.2d 169 and

*Wipf v. Hutterville Hutterian Brethren, Inc.*, 2012 S.D. 4, 808 N.W.2d 678.

[¶4.]    In the first action, members of the Wipf faction sued members of the Waldner faction, asking the circuit court to install Johnny Wipf and other Wipf faction members as Hutterville's directors and officers. *Waldner*, 2010 S.D. 86, ¶ 9, 791 N.W.2d at 172. On the Waldner faction's motion, the circuit court dismissed for lack of subject matter jurisdiction. *Id.* ¶ 17. We affirmed on appeal, holding that resolution of the dispute would require a secular court to become unconstitutionally entangled in a religious controversy. *Id.* ¶ 34.

[¶5.]    While an appeal was pending in the first action, the Wipf faction commenced a second suit seeking judicial dissolution of Hutterville. Since the members were deadlocked over the management and control of corporate affairs, the Wipf faction asserted that the deadlock was preventing Hutterville from carrying out its corporate purposes, causing irreparable injury to Hutterville's financial status and existence, and threatening the health and safety of its members. A receiver was needed, the Wipf faction contended, to preserve corporate assets and carry on business pending dissolution.

[¶6.]    In October 2010, the Waldner faction moved to dismiss for lack of subject matter jurisdiction: judicial dissolution would again require the court to unconstitutionally intrude into a religious dispute. It also sought summary judgment because, in its view, the Wipf faction members had no standing to seek dissolution as they were neither company directors nor colony members, having been excommunicated by the Waldner faction. Both motions were denied.

[¶7.] Following a bench trial, the circuit court ruled that Hutterville would be dissolved under SDCL chapter 47-26. It identified Hutterville's members and found that the directors were deadlocked, that the conduct of the Waldner faction was illegal and oppressive, and that Hutterville was not functioning in accord with its corporate purposes. In pondering whom to appoint as a receiver, the court announced that "the receiver would not be someone from either side; not the plaintiff, not the defendant, not members of the plaintiff, not members of the defendant, but some independent third party who could collect the assets, sell the assets, pay all the bills that exist and divide the proceeds." If they were unable to agree, then each faction could submit proposed names with credentials. The Wipf faction proposed two names; the Waldner faction declined to submit names. Nor would the Waldner faction agree or object to the names the Wipf faction submitted. The court appointed Harvey Jewett, one of the individuals proposed by the Wipf faction.

[¶8.] A week later, the Waldner faction appealed the dissolution order, asserting the circuit court's lack of subject matter jurisdiction. While that appeal was pending, the Waldner faction petitioned the circuit court to set a supersedeas bond. During the hearing, the parties and the court discussed whether the appointment of the receiver would need to be stayed pending the appeal. Citing SDCL 15-6-62(a), the court ruled that a receivership action need not be stayed pending appeal. Thereafter, the parties agreed that Receiver Jewett would be in control of Hutterville's assets and be responsible for overseeing bill payments and other corporate affairs. In lieu of a supersedeas bond, the court ruled that Receiver

Jewett would continue to control Hutterville until the outcome of the appeal. At the conclusion of the hearing, counsel for the Wipf faction indicated that it would provide a written oath for the receiver to be filed with the circuit court.

[¶9.] In April 2011, Receiver Jewett moved to modify the appointment order to further define and clarify his authority. Represented by new counsel, the Waldner faction argued that the circuit court did not have jurisdiction to consider the motion because an appeal was pending. The court responded that the Waldner faction's predecessor counsel agreed that the receiver would, in the interim, be permitted to act, gather the assets, and oversee Hutterville's day-to-day operations. Counsel for the Waldner faction then questioned Jewett about a purported conflict of interest from his affiliation with a law firm that had represented Hutterville before the dissolution action. Interjecting, the court explained to counsel that both sides were afforded an opportunity to suggest a receiver, and the Waldner faction submitted no names and offered no objections to the Wipf faction's two proposed names. The court declared the issue waived and granted Receiver Jewett's motion to modify.

[¶10.] Later in April 2011, Receiver Jewett sought an order that all assets of the entity known as Hutterville Cabinet Co. be subject to the control and administration of the receivership. The Waldner faction objected on grounds that the circuit court did not have jurisdiction while the case was pending before the Supreme Court, the receiver had a conflict of interest, and the court had no jurisdiction over Hutterville Cabinet Co. The court granted Receiver Jewett's request.

[¶11.]     On January 25, 2012, we issued our decision on the Waldner faction's appeal, ruling that the circuit court lacked subject matter jurisdiction to order judicial dissolution of Hutterville because "the underlying religious controversies over church leadership so pervade the dissolution of the religious corporation that the dissolution is beyond a secular court's jurisdiction." *Wipf*, 2012 S.D. 4, ¶ 27, 808 N.W.2d at 686. We reversed and remanded, with instructions "to dismiss the case for lack of subject matter jurisdiction." *Id.* ¶ 28.

[¶12.]     Before the case was remitted to the circuit court, Receiver Jewett moved for approval of his accounting, for payment of his fees and expenses, and for payment of a bill from Siegel, Barnett & Schutz, LLP. The Waldner faction retained additional counsel and argued that because this Court had ruled that there was no subject matter jurisdiction, the circuit court had had no power to initially appoint Jewett as a receiver, and therefore "must restore property subject to the receivership to the true owner as soon as possible and in an orderly proceeding." The faction requested that Receiver Jewett provide a full and complete accounting. Yet it opposed any payment for his fees and expenses, asserting that the fees "are properly taxable to the [Wipf faction] as the non-prevailing party in this matter." Repeating its previous arguments, the Waldner faction persisted in its claim that Jewett had a conflict of interest.

[¶13.]     At a hearing held in February 2012, Receiver Jewett gave a report to the circuit court on his accounting. In response to questions from the Waldner faction's counsel, Jewett indicated that he had not taken an oath or obtained a bond. At the conclusion of the hearing, the court orally ordered that Receiver

Jewett be paid his fees and expenses. But the court denied payment to Siegel, Barnett & Schutz from receivership funds because the receiver did not employ the services of the law firm. Jewett was directed to retain $100,000 from the receivership to cover incidental bills, but otherwise to deliver all remaining assets to Hutterville Hutterian Brethren, Inc.[1]

[¶14.]        Essentially switching positions, the Wipf faction (as opposed to the Waldner faction) argued to the circuit court that it did not have jurisdiction to act. It claimed that the court was without power to enter the order directing Jewett to deliver all remaining assets to Hutterian Brethren, Inc. because the underlying case from this Court had not been remitted. In response (and contrary to all previous arguments and objections), the Waldner faction asserted that the circuit court had jurisdiction to discharge the receiver, as the subject embraced "an ancillary, collateral, and supplemental matter[.]" It relied on SDCL 47-26-29 to assert that the circuit court had the power to increase or diminish the powers of the receiver at any time. Further the Waldner faction claimed that the Wipf faction waived the right to contest the circuit court's order because it joined the receiver's motion for approval of his final accounting. Lastly, the Waldner faction argued that the circuit court "was not divested of this jurisdiction to modify and diminish Mr. Jewett's duties following" this Court's decision.

---

1.     The Wipf faction petitioned for a rehearing, which we denied in March 2012, stating, "This court has not determined the merits of the jurisdictional arguments regarding returning the parties to the status quo as it existed before the appointment of a receiver. The circuit court should consider those issues on remand." The Wipf faction moved the circuit court to vacate its order directing the return of the receivership property to the corporation.

[¶15.]     In June 2012, the circuit court denied the Wipf faction's motion to set aside its February 2012 order.  Receiver Jewett moved for approval of his actions, the accounting, and requested to be discharged.  Resuming its position as the objecting party, the Waldner faction opposed the motion, asserting that the circuit court (1) had no jurisdiction to approve Jewett's accounting, confirm or ratify the receiver's conduct, award him fees, or cloak him with immunity; (2) must return Hutterville to its status quo ante; and (3) should award the Waldner faction its costs and fees.

[¶16.]     In July 2012, the circuit court issued a memorandum decision (1) approving the receiver's accounting of all monies received from and paid out of the receivership; (2) authorizing the payment of the receiver's administrative and professional fees and costs from the receivership; (3) directing the receiver to deliver the balance of the receivership funds to Hutterville Hutterian Brethren, Inc.; (4) declaring that upon the payment of the funds, Receiver Jewett "shall be disgorged and released from any further obligations of any nature to and on behalf of Hutterville Hutterian Brethren, Inc. and all related entities and their respective members, directors, officers, successors and assigns"; (5) ordering the receivership terminated; (6) dismissing the Wipf faction's complaint; and (7) allowing the Waldner faction to "file an itemized application for taxation of costs against the Wipf faction."

[¶17.]     After retaining new counsel, the Waldner faction, in August 2012, sought to remove Presiding Circuit Court Judge Jack R. Von Wald.  It claimed that the judge must be disqualified because of his son's employment with a law firm

representing the Waldner faction in federal district court. Circuit Court Judge Jon S. Flemmer issued findings and fact and conclusions of law denying the request.[2]

[¶18.] Receiver Jewett submitted an application for approval of costs and fees incurred after his last billing. Over the Waldner faction's jurisdictional objections, the circuit court ruled that it had inherent authority and general jurisdiction to manage its affairs and to regulate, control, and administer the proceedings before it, including the receivership under SDCL 47-1A-1432 and SDCL chapter 21-21. It ruled that Jewett, at all times, acted within the scope of his authority, and that his actions had been consistent with South Dakota law. Accordingly, it approved Jewett's actions and accounting. It terminated the receivership and discharged Jewett on October 25, 2012.

[¶19.] In this appeal, the Waldner faction asserts that (1) the circuit court erred when it continued to exercise jurisdiction over Hutterville and its property after our decision on January 25, 2012; (2) all orders entered before and after January 25, 2012, adverse to Hutterville are void *ab initio*; (3) the circuit court had a legal and equitable obligation to restore to Hutterville what was taken from it when the court acted without subject matter jurisdiction; and (4) the court erred when it ruled that the receiver's actions were consistent with South Dakota law. By notice of review, the Wipf faction asserts error in the circuit court's order for the

---

2.      The Waldner faction petitioned this Court for a writ to stop the circuit court from continuing to act after we declared that the court lacked subject matter jurisdiction. We denied the petition as there was "a plain, speedy, and adequate remedy in the ordinary course of law."

receiver to issue a check for the receivership funds to Hutterville Hutterian Brethren, Inc.[3]

## II.

### 1. Circuit Court's Power to Act After Remittitur

[¶20.] The Waldner faction maintains that the moment this Court ruled on January 25, 2012, the circuit court was without jurisdiction over the subject matter and had no authority to continue to control Hutterville and its property. Our decision, it argues, left "no room for interpretation." By continuing to act, issue orders, and control Hutterville's property from January 25 through October 25, 2012, "the circuit court plainly acted in excess of its jurisdiction and constitutional authority." Those orders and actions of the court, the Waldner faction contends, adversely affected corporate property and Hutterville's interests.

[¶21.] Subject matter jurisdiction is the "authority [of courts] to adjudicate the type of controversy involved in the action." Restatement (Second) of Judgments § 11 (1982). *See also Barnes v. Matzner*, 2003 S.D. 42, ¶ 10, 661 N.W.2d 372, 375. A court always has jurisdiction to decide jurisdiction. As Justice Oliver Wendell Holmes explained: a court "necessarily [has] jurisdiction to decide whether the case [is] properly before it." *United States v. Shipp*, 203 U.S. 563, 573, 27 S. Ct. 165, 166,

---

3. Our standard of review remains as we stated in *Wipf*:

> "We review jurisdictional issues *de novo*." *Waldner*, 2010 S.D. 86, ¶ 18, 791 N.W.2d at 174. A trial court's findings of fact are examined under the clearly erroneous standard. SDCL 15-6-52(a); *Lien v. Lien*, 2004 S.D. 8, ¶ 14, 674 N.W.2d 816, 822. And conclusions of law are reviewed de novo. *Lien*, 2004 S.D. 8, ¶ 14, 674 N.W.2d at 822.

2012 S.D. 4, ¶ 10 n.4, 808 N.W.2d at 681 n.4.

51 L. Ed. 319 (1906). Consonant with this comes the "authority, from the necessity of the case, to make orders to preserve the existing conditions[.]" *Id.*

[¶22.]     In *Wipf*, we ruled that the circuit court did not have subject matter jurisdiction to resolve the parties' religious dispute. 2012 S.D. 4, ¶ 27, 808 N.W.2d at 686. We did not rule, however, that because the court had no jurisdiction over the *dissolution* subject matter, it therefore had no authority on remand to wind up the receivership and discharge the receiver. It seems the Waldner faction takes the position there was no authority to do anything. Setting this unworkable view of jurisdiction aside, we note that even the Waldner faction recognized a court's inherent authority to act when it argued to the circuit court in April 2012 that a receivership is ancillary to the underlying action, and that under SDCL 47-26-29, the circuit court may increase or diminish the receiver's powers at any time.

[¶23.]     Dismissal of a suit will not ipso facto discharge a receiver.[4] Rather, when a receiver's appointment is without authority, from the necessity of the circumstances, the court bears the duty and power to engage the proper proceedings to wind up the receivership and discharge the receiver. *See* SDCL 47-26-35; Clark, *A Treatise on the Law and Practice of Receivers* § 301 (1929).

[¶24.]     From reviewing the circuit court's proceedings after our decision finding no subject matter jurisdiction, it appears the court acted only to wind up the

---

4.     *See generally State ex rel. Miller v. Kroger*, 135 N.E.2d 520, 522 (Ind. 1956); *Real Estate Apartments, Ltd. v. Bayshore Garden Apartments, Ltd.*, 530 So. 2d 977, 979 (Fla. Dist. Ct. App. 1988); *Dixie-Land Iron & Metal Co., Inc. v. Piedmont Iron & Metal Co.*, 213 S.E.2d 897, 898 (Ga. 1975); 75 C.J.S. *Receivers* § 81 (2013); 65 Am. Jur. 2d *Receivers* § 148 (2013).

receivership. From February 3, 2012, when Receiver Jewett first moved for approval of his accounting and for payment of his receivership fees, until October 25, 2012, when the court ordered Jewett's discharge, the parties appeared before the court numerous times, essentially rehashing the same issues — objections to the receiver's accounting, objections to the court's jurisdiction (made by both parties at some point), objections to the receiver's request for payment, assertions the receiver had a conflict or failed to take an oath or post a bond, and an effort to disqualify the judge. These maneuvers prolonged the receivership, but none of the court's actions interfered with the parties' religious dispute or addressed the subject matter of the corporate dissolution. Therefore, the circuit court did not act in excess of its jurisdiction or constitutional authority following remittitur.

## 2. Circuit Court's Orders Before and After Remittitur

[¶25.] The Waldner faction argues that because the circuit court never had subject matter jurisdiction, all its orders and judgments that adversely affected Hutterville, its business, and its property are, as a matter of law, void *ab initio* and must be vacated. To support its argument, the Waldner faction relies on cases holding that when courts lack subject matter jurisdiction any resulting judgments are void. As we have explained, though, the circuit court had the authority and duty to wind up the receivership and discharge the receiver. Those orders are not void for lack of jurisdiction. As for the court's order originally appointing the receiver in 2011, the Waldner faction is correct that after our decision on January 25, 2012, the order was no longer valid. Thus, the court could not conduct an *ongoing* receivership for the purpose of dissolving the corporation. *See Humble*

*Exploration Co., Inc. v. Walker*, 641 S.W.2d 941, 943 (Tex. App. 1982); Clark, *A Treatise on the Law and Practice of Receivers* § 301 (1929). But the circuit court had no choice but to conduct necessary ancillary matters to terminate the receivership and carry out this Court's directive. *See Bayoud v. Bayoud*, 797 S.W.2d 304, 310 (Tex. App. 1990). Accordingly, we see no error in the refusal to declare void all orders related to the receivership.

### 3. Circuit Court's Obligation to Return Hutterville Property

[¶26.] Although the Waldner faction maintains that the circuit court lacked jurisdiction to approve the receiver's actions, it insists the court had a legal and equitable obligation to "order its own receiver to return Hutterville's property and to otherwise mitigate any damages incurred[.]" Specifically, the Waldner faction seeks "reimbursement of all Hutterville's costs and fees incurred in this proceeding that were paid out of the receivership estate to everyone but its own [the Waldner faction's] lawyers, and reimbursement of all the losses and damages that were otherwise caused by and result [from] the unconstitutional receivership."[5]

[¶27.] Generally, when a party requests the appointment of a receiver, and thereafter the appointment is deemed without legal authority, it is the requesting party and not the receivership funds that are liable for the expenses of the receivership. *Mintzer v. Arthur L. Wright & Co., Inc.*, 171 F. Supp. 263, 264 (E.D.

---

5. The Waldner faction also seems to argue that the receiver or the Wipf faction is liable for all losses and damages as a result of the receivership. But there is no claim that any losses or damages were suffered, except as it relates to the claim that Hutterville should be reimbursed for all expenses and fees paid to the receiver. Thus, we only address the receiver's fees and expenses.

Pa. 1959). This general rule must be amenable to the circumstances surrounding the appointment of the receiver and the creation of the receivership. Thus, the circuit court had the discretion to charge the receivership fees to the receivership estate or to a particular party. *See* SDCL 47-26-31; SDCL 47-1A-1432. *See also W.F. Potts Son & Co., Inc. v. Cochrane*, 59 F.2d 375, 378 (5th Cir. 1932); 65 Am. Jur. 2d *Receivers* §§ 229-33.

[¶28.] Here, at the time the circuit court appointed the receiver, the court acted within its power and authority under SDCL 21-21-3, SDCL 47-1A-1432, and SDCL 47-26-29, and later acted to preserve existing conditions until this Court finally resolved the jurisdictional issue. The receiver did not take control of Hutterville and its assets until February 2011, after the Waldner faction agreed to give Receiver Jewett the power to act pending the resolution of the appeal. Then, after January 25, 2012, each time the receiver moved for an approval of his accounting, the Waldner faction objected, effectively working against the timely and speedy termination of the receivership, and frustrating the court's efforts to wind up the receivership. At nearly every hearing, the Waldner faction questioned Receiver Jewett about his affiliation with Siegel, Barnett & Schutz, his failure to take an oath, his method of accounting, and so on. At nearly every hearing, the receiver reported to the court his difficulties in winding up the receivership because of a lack of cooperation.[6] Furthermore, the corporation was the only entity in these

---

6. A lack of cooperation is probably an understatement. The circuit court found that members of the Waldner faction "refused to cooperate." In one of Receiver Jewett's affidavits, he explained that the Waldner faction "had engaged in the practice of hiding, damaging and disabling equipment, titling

(continued . . .)

proceedings capable of paying these fees. Under the circumstances, the circuit court did not abuse its discretion when it ordered payment of the receiver's fees and expenses from receivership funds and allowed the receiver to use receivership funds to pay the expenses of third parties.

### 4. Release and Discharge of Receiver

[¶29.] As part of its final order, the circuit court ruled that the receiver, his staff and counsel, were "released and discharged from any claims by, and liability of any nature to Hutterville Hutterian Brethren, Inc., Beulah Hutterian Brethren, Inc., and their respective members, directors, officers, successors, affiliates, and assigns relating, directly or indirectly to the actions, decisions, receipts, disbursements, and accountings involved with the administration of the receivership." The Waldner faction claims that even if the circuit court had jurisdiction to approve the receiver's actions, the court had no authority to release the receiver from liability because the receiver's appointment and the receivership were invalid under South Dakota law. It contends that (1) Receiver Jewett was entitled to no fee because he failed to take an oath as required by SDCL 21-21-8; (2) his actions were not authorized by South Dakota law because he was an interested person unable to serve as a receiver without written consent of the parties under

_____

(. . . continued)

vehicles in false names, diverting money to other accounts, lying to my staff regarding the use of that money, using false names. . . . They had simply adopted a policy of obstruction and interference." Jewett reported that substantial sums of money had been "diverted" to a bank account in Canada. In response, George Waldner, one of the Waldner faction leaders, stated in an affidavit, "What Mr. Jewett characterizes as 'hiding assets' was in fact [the Waldner faction's] efforts to protect and secure assets from theft."

SDCL 21-21-7; and (3) he was not entitled to immunity for decisions and actions made during the administration of the receivership because he knowingly failed to comply with South Dakota law and was not acting under a lawful order of the circuit court.

[¶30.] Before assuming any duties, a receiver must take an oath swearing to perform those duties faithfully and obey the orders of the court. SDCL 21-21-8. Under SDCL 21-21-7, no interested person "in an action can be appointed receiver therein, without the written consent of the parties, filed with the clerk." Receiver Jewett took no oath.[7] And it is undisputed that he was a named partner with Siegel, Barnett & Schutz, a law firm that listed Hutterville Hutterian Brethren, Inc. as a past or current client.

[¶31.] At a hearing in April 2011, before this Court's decision remanding the case, the circuit court ruled that the Waldner faction waived whether Receiver Jewett was an interested person because the faction failed to object to his appointment. Indeed, the Waldner faction did not object until well after Receiver Jewett was appointed and after the Waldner and Wipf factions had mutually

---

7. Receiver Jewett and the Wipf faction contend that because the receiver was appointed under SDCL chapter 47-26, the requirements of SDCL chapter 21-21 are inapplicable. They further claim that if chapter 21-21 applies, the Waldner faction failed to timely raise the issues of an oath or conflict, and therefore, waived their right to complain now. The circuit court's order directing the appointment of a receiver does not provide whether the court relied on chapter 47-26 or chapter 21-21. In the court's oral ruling, it cited the factors in SDCL Title 47 related to the judicial dissolution of a corporation. Nonetheless, the Wipf faction requested the court to appoint a receiver under chapter 21-21, and therefore, we assume without deciding that Receiver Jewett was required to take an oath and could not be an interested party unless the parties consented.

consented to the receiver taking control of Hutterville. *See Norwest Bank S.D. v. Venners*, 440 N.W.2d 774, 775-76 (S.D. 1989) (discussing waiver). Even if the oath issue had not been waived, we fail to see how the lack of an oath impaired the validity of the court's order appointing the receiver or impugned the receiver's actions in accord with the court's orders. Receiver Jewett's reports of his activities and his accounting to the court were given under oath in the form of testimony and affidavits.

[¶32.] As for the question of receiver liability, parties who, though not judges, execute the orders of judges, such as court-appointed receivers, share judicial immunity with the court. *See Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 1104-05, 55 L. Ed. 2d 331 (1978) (§ 1983 action); *Davis v. Bayless,* 70 F.3d 367, 373 (5th Cir. 1995). The doctrine of judicial immunity protects the integrity of the judicial process by ensuring that judges can act on the merits of a case, rather than merely acting to limit harassment from disappointed litigants. *See Forrester v. White,* 484 U.S. 219, 225-26, 108 S. Ct. 538, 543-44, 98 L. Ed. 2d 555 (1988). Receivers act as officers or agents of the court subject to the control of the court. *See* SDCL 47-1A-1432. Absent immunity, receivers would be "a lightning rod for harassing litigation aimed at judicial orders." *Kermit Const. Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir. 1976).

[¶33.] Yet the Waldner faction maintains that Receiver Jewett was not entitled to immunity because he was appointed in clear absence of jurisdiction and the circuit court and the receiver "simply chose to ignore" the fact that the court was not to interfere with Hutterville's religious affairs. First, the Waldner faction cites

no authority for the notion that receivers become personally liable when courts appoint them in error. Judicial immunity will not cease because a judge's action was "in error," "done maliciously, or . . . in excess of . . . authority[.]" *Stump*, 435 U.S. at 356-57, 98 S. Ct. at 1105 (citation omitted). Second, it is true that judicial actions taken in "'clear absence of all jurisdiction'" will not be immune. *Id*. (citation omitted). Thus, "'[w]here there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is *known to the judge*, no excuse is permissible.'" *Id*. at 356 n.6, 98 S. Ct. at 1104 n.6 (emphasis added) (citation omitted).

[¶34.]    A distinction must be made, however, between our conclusion in *Wipf* of no subject matter jurisdiction over a religious dispute and "'clear absence of all jurisdiction'" that was "'known to the judge.'" *See id*. at 356 n.6., 357, 98 S. Ct. at 1104 n.6, 1105 (citation omitted). The Supreme Court gave the example of a probate judge presiding over a criminal action as an act in clear absence of jurisdiction. *See generally id*. Here, there was no clear absence of all jurisdiction in the circuit court. South Dakota circuit judges have, among other things, "original jurisdiction" over "all actions or proceedings in chancery;" "all actions at law and in equity;" and "all other cases now or hereafter provided by law granting jurisdiction to the circuit court, and as heretofore granted to district county, municipal, justice of the peace, and police magistrate courts." SDCL 16-6-9. Corporate dissolution actions fall within the jurisdictional province of circuit courts. SDCL 47-1A-1430. As an appointed receiver, Jewett shared immunity with the court.

[¶35.]     Still, the Waldner faction claims that even if the circuit court had authority to appoint a receiver it abused its discretion when it released Jewett from liability because he was an "interested party" who "violated South Dakota law because he was not required to take an oath or post a bond," and who failed to act in good faith. But, again, except for the good faith question, these arguments were waived.

[¶36.]     As to good faith, receivers are not personally liable when they exercise ordinary care and prudence in the performance of the receivership.[8] Of course, receivers are not immune to all liability. *Coleman v. Dunlap*, 695 F.3d 650, 654-55 (7th Cir. 2012). Judges have no authority to grant immunity for unlawful acts. *See Tower v. Glover,* 467 U.S. 914, 922-23, 104 S. Ct. 2820, 2826, 81 L. Ed. 2d 758 (1984). But in claiming that Jewett acted in bad faith, the Waldner faction only adverts to the same conflict of interest, lack of an oath, and bond issues — all waived. It offers no evidence that the receiver acted outside the scope of his appointment, much less unlawfully or in bad faith. The circuit court found that Receiver Jewett's actions during the receivership were all done in good faith. That finding was not clearly erroneous, and thus the court did not err in relieving Receiver Jewett from liability for his actions in administering the receivership.

---

8.     *See Vander Vorste v. Nw. Nat'l Bank,* 81 S.D. 566, 570, 572-73, 138 N.W.2d 411, 413, 414-15 (1965); *Yaw v. Beeghly*, 440 N.E.2d 1066, 1069 (Ill. App. Ct. 1982) (discharge of receiver bars negligence suit on grounds of res judicata); *City of St. Louis v. Goldenberg*, 529 S.W.2d 33, 37 (Mo. Ct. App. 1975). *See also* 75 C.J.S. *Receivers* §183; 65 Am. Jur. 2d *Receivers* § 295.

### 5. Return of Receivership Funds to the Corporation.

[¶37.]     By notice of review, the Wipf faction argues that the circuit court erred when it ordered the receiver to issue the check representing the receivership funds to Hutterville Hutterian Brethren, Inc.  According to the Wipf faction, this Court's January 25, 2012 decision "made clear that because of the religious nature of the dispute, no victory was to be had by either group[.]"  On the contrary, what we hoped to make clear was that our courts have no subject matter jurisdiction to resolve the religious dispute between these rival factions.  Hutterville Hutterian Brethren, Inc. was the owner of Hutterville's funds and assets before the receivership.  By ordering the return of the receivership funds to that corporation at the address listed with the Secretary of State, the circuit court correctly declined to interfere with the parties' religious dispute.

### III.

[¶38.]     To conclude, we note that in its appellate brief, the Waldner faction asks us to void all the circuit court's actions in this case performed in the absence of jurisdiction.  In the same argument, it asks us to compel the circuit court to perform certain acts it contends flow from our January 25, 2012 decision.  Insisting that the circuit court could not act and then demanding that we order the court to act highlights the paradoxical positions taken by the Waldner faction before the circuit court and now in this appeal.  To compel the circuit court to act on behalf of the Waldner faction's interests enmeshes us in the very controversy we declared off limits.  Ultimately, to comply with our mandate and dismiss this case, the circuit court had to wind up the receivership and discharge the receiver.  The record shows

that although the receivership was not terminated until October 2012, it was not because the court unlawfully prolonged the receivership or persisted in adjudicating Hutterville's ecclesiastical dispute.

[¶39.]      Affirmed.

[¶40.]      GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and SABERS, Circuit Court Judge, concur.

[¶41.]      SABERS, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.